**James W. STINSON and Letha L. Stinson, his wife, Plaintiffs,**

**v.**

**GAF CORPORATION, in its own right and as successor in interest to the Ruberoid Company, The Celotex Corp., in its own right and successor in interest to the Philip Carey Mfg. Co., Philip Carey Corp., Briggs Mfg. Co. and/or**

**Panacon Corp., Flintkote Company, Asbestos Corp., Ltd., Garlock, Inc., and Turner & Newall, PLC, in its own right and as successor in interest to Keasbey & Mattison Co., and Manville Fund, Defendants.**

Civ. A. No. 88–1691.

United States District Court, W.D. Pennsylvania.

Sept. 18, 1990.

Antonio Pyle, Janice Savinas, and Joel Persky, Pittsburgh, Pa., for plaintiffs.

L. Jane Charlton, John A. Bacharach, Jan Swensen, Daniel Mcdyer, Pittsburgh, Pa., Fredric Goldfein, Philadelphia, Pa., and Ollie Hawkins, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

The plaintiffs have filed the above action against a number of defendants, including defendant Flintkote Company, alleging that during the course of his employment the plaintiff-husband used and/or was exposed to asbestos substance and asbestos-containing products of the various defendants. As a result of this use and/or exposure, plaintiff-husband has allegedly developed an asbestos-related medical condition.

The Flintkote Company (Flintkote) has filed for summary judgment claiming that there has been no evidence that plaintiff used or was exposed to asbestos-containing products manufactured, sold or distributed by Flintkote. Though plaintiffs have failed to specifically mention such in their Complaint or Pre–Trial Narrative, they now contend that the husband's injuries were caused by raw asbestos fibers produced by Flintkote Mines Limited (FML), a wholly owned subsidiary of Flintkote.

The plaintiffs contend that Flintkote controlled FML such that FML was a "mere instrumentality" of Flintkote, and therefore, Flintkote is liable for the acts of its subsidiary. In order to recover from a parent corporation under the "mere instrumentality" test, plaintiffs must prove:

1. That the parent controlled the subsidiary to such a degree that the subsidiary is a mere instrumentality;

2. That the parent is perpetrating a fraud or wrong through its subsidiary (e.g., torts, violation of a statute, or stripping a subsidiary of its assets); and

3. An unjust loss or injury to the claimant, such as insolvency of a subsidiary. *Fanfan v. Berwind Corp.*, 362 F.Supp. 793, 795 (E.D.Pa.1973).

Some of the factors considered by the Court in *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466 (3d Cir.1988) to determine whether two corporations were truly separate are: adequacy of capitalization; overlapping of officers and directors; separate recordkeeping; maintenance of separate banking accounts; payment of taxes; and authority over day-to-day operations.

Flintkote has demonstrated through the affidavit of Christine Hamilton, the Assistant Secretary of Flintkote Company, that FML was a subsidiary independent of the parent. FML mined and sold asbestos to a number of customers, including Flintkote.

Flintkote was invoiced for asbestos purchased from FML and made payments to FML as would any other customer. FML produced its own monthly and yearly financial reports of its asbestos production and sales by grade, subgrade and customer. Expenses incurred by FML as a result of day-to-day operations were paid in full by FML. There was no commingling of funds, and FML has at all times relevant remained solvent.

■ In order to hold that a subsidiary is the "mere instrumentality" or "alter ego" of the parent corporation, Pennsylvania law requires that the plaintiff bear the burden of establishing that the

"controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham." *Culbreth v. Amosa Ltd.,* 898 F.2d 13, 14 (3d Cir.1990)

■ The Court further stated that in order to find a parent corporation liable for the acts of its subsidiaries, Pennsylvania requires a

"threshold showing that the controlled corporation acted robot—or puppet-like in mechanical response to the controller's strings or pressure on its buttons." *Culbreth* at 15.

■ In an effort to meet its burden, plaintiffs have produced seventy (70) pages containing nine separate advertisements which mention both FML and Flintkote. Such advertisements appear in the trade magazine known as "Asbestos" and merely confirm that FML is a subsidiary of Flintkote and that FML supplied asbestos fibers, some of which Flintkote used in its own operations. Such advertisements do not support plaintiffs' claim that FML was a mere instrumentality of Flintkote.

Plaintiffs have also made references suggesting that Flintkote played an active role in FML's operations. These mere asser-

tions by plaintiff that Flintkote was involved in the business decisions of FML are not supported by any evidence. There appears to be no evidence in the current record that would demonstrate that FML was a "mere instrumentality" of Flintkote such that would make Flintkote liable for the actions of FML.

In order to withstand Motions for Summary Judgment, plaintiffs are required to come forward with specific facts showing that there is a genuine issue of fact. Rule 56(e), Fed.R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party must go beyond the pleadings and introduce evidence setting forth specific facts demonstrating the existence of genuine issues for trial. Plaintiffs have been unable to meet their burden.[1]

For the above reasons, Flintkote's Motion for Summary Judgment shall be granted.

---

1. Under the second prong of the *Fanfan* test, plaintiffs must offer some evidence to show that Flintkote committed a wrong or fraud through FML. Plaintiffs have failed to produce any evidence that Flintkote acted through FML at all.

The third prong of the *Fanfan* test contemplates an "injustice" such as insolvency of the subsidiary. Again, there has been no evidence indicating that any such injustice has occurred, and the affidavits show that FML is not insolvent.