578 A.2d 481

**David BRECHER and Janice Brecher, his Wife, Appellants,**

**v.**

**Jack CUTLER and Searle Pharmaceutical, Inc.**

Superior Court of Pennsylvania.

Argued June 7, 1990.

Filed July 30, 1990.

212

David N. Rosen, Philadelphia, for appellants.

Murray S. Levin, Philadelphia, for Searle, appellee.

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

Appellants David Brecher and Janice Brecher, his wife, bring this appeal from the Order dated December 4, 1989, granting summary judgment to appellee Searle Pharmaceuticals, Inc. (now merged into and known as G.D. Searle & Co.), one of two defendants in the case. Appellants instituted this action on May 10, 1985 to recover damages for injuries allegedly sustained as a consequence of Mrs. Brecher's use of the Cu–7 copper contraceptive IUD, (Cu–7), manufactured by Searle. The basis of appellants' complaint was that Mrs. Brecher had been unable to become pregnant as a result of pelvic infection and adhesions caused by the Cu–7.

The facts which gave rise to this appeal may be summarized as follows from the Opinion of the trial court:

Mrs. Brecher had a Cu–7 inserted by her gynecologist, Dr. Cutler, on January 8, 1980, approximately three weeks after undergoing an abortion. She reported no problems with the Cu–7. On a follow-up visit, Dr. Cutler discovered that it had fallen out of position. It was removed and a second one inserted one week later. Mrs. Brecher wore that Cu–7 without problem until June, 1981. The Cu–7 was removed, not for any medical reason but because she had begun dating Mr. Brecher, who had had a vasectomy eight years earlier.

Plaintiffs were married to each other in June, 1982. As they desired to have children, Mr. Brecher underwent surgery to attempt a reversal of the vasectomy. His fertility was not restored, however, as reflected by a low sperm count and poor sperm motility.

In December, 1983, Mrs. Brecher began medical evaluation of her fertility by Dr. Ronald Traum. His evaluation revealed a problem with cervical mucus and an abnormal ovulatory pattern, neither of which were related to the Cu–7. In February, 1984 Mrs. Brecher underwent a laparoscopy which revealed a pelvic infection and adhesions surrounding her fallopian tubes, prohibiting pregnancy. The Brechers claim this was caused by the Cu–7. Dr. Traum informed the Brechers that surgery could lyse the adhesions but that, unless Mr. Brecher's sperm motility could be improved, he would not recommend it. Mrs. Brecher chose not [to] have the surgery.

Following the commencement of this suit and after the close of discovery, both Dr. Cutler and Searle moved for summary judgment as to liability. The undersigned granted this motion only as to Searle. Plaintiffs filed this timely appeal.

(Slip Op., Lawrence, J., 1/25/89, pp. 1–2.)

The basis of appellants' suit against Searle was, first, Searle failed to adequately warn Dr. Cutler of the hazards associated with the use of the Cu–7 or, in the alternative, their aggressive promotion of the contraceptive overrode the warnings, and second, Searle failed to warn Mrs. Brecher directly of the possible complications she could suffer from using the Cu–7. The trial court, following the "learned intermediary" doctrine, found Searle owed no duty to Mrs. Brecher and it had provided Dr. Cutler with both the physician's insert and the patient brochure as required by federal regulations, stating the appropriate warnings and precautions.

Appellants contend the court erred in granting summary judgment to Searle because the record indicates there is a

genuine issue of material fact for the jury, as factfinder, to decide. They argue the court repeatedly refers to the lack of "evidence" and that the court, in essence, is admitting there is something to submit to a jury. They go on to say, "[i]t is not the function of the summary judgment to eliminate Appellant's right to try the case if it can show or argue successfully the negligence or culpability of the Appellee. Thus, it is conceivable that literature not yet produced because that is "evidence" will support Appellant's claim...." (Brief of Appellants, p. 8.) For the reasons that follow, we disagree with appellants and affirm the Order granting summary judgment to appellee.

The pertinent sections of Pa.R.C.P. 1035, **Motion for Summary Judgment,** are as follows:

(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.

(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

. . . . .

(d) Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this

rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

■ While appellants are not required to present their entire case in opposing a motion for summary judgment, they cannot rest upon mere allegations in the pleadings but must present depositions, affidavits, or other acceptable documents which show there is a genuine issue of material fact to submit to the factfinder and the moving party is not entitled to judgment as a matter of law. "Bold unsupported assertions of conclusory accusations cannot create genuine issues of material fact." *McCain v. Pennbank*, 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313–14 (1988).

We note initially that when reviewing an entry of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or a clear abuse of discretion. To uphold a summary judgment, there must not only be an absence of genuine factual issues, but also an entitlement to judgment as a matter of law. The trial court must examine the record in a light most favorable to the non-moving party and accept as true all well-pleaded facts in the non-moving party's pleadings.

*Green v. K & K Insurance Co.*, 389 Pa.Super. 73, 74, 566 A.2d 622, 623 (1989) (citations omitted).

■ This is not the first time a plaintiff has argued that summary judgment was inappropriate because certain evidence could have been brought out at trial. In *Roland v. Kravco, Inc.*, 355 Pa.Super. 493, 513 A.2d 1029 (1986), plaintiff fell in defendants' parking lot and commenced an action in trespass to recover for her injuries. Defendants filed motions for summary judgment claiming plaintiff did not set forth facts showing the parking lot was in a dangerous condition at the time of her fall. The trial court granted the motions and plaintiff appealed. This Court reviewed the deposition of plaintiff which was the only evidence as to how the accident occurred. We agreed with

the trial court that plaintiff failed to present facts showing there was a genuine issue for a jury to consider and defendants were not entitled to summary judgment as a matter of law.

The appellants contend that the court below erred in placing the burden of proof upon them to set forth facts showing that a genuine issue of material fact exists. However, as provided for in Pa.R.C.P. 1035(d) the non-moving party in his response to a properly supported motion for summary judgment must in the response "by affidavits or as otherwise provided in this rule, ... set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him." The appellant admitted that she did not see any ice or icy ridges on the parking lot surface, notwithstanding that she was looking at the ground at the time that she fell, and that she did not know what caused her to slip. Since by her own statements she did not observe any ice when she fell, she had the obligation to show by affidavit or otherwise that there were icy ridges or elevations which caused her to fall. On appeal, the appellant argues that she could produce two witnesses, a friend, Margaret Coyle, and Officer McNamara, who "could testify to the icy conditions of the parking lot within an hour of the appellant's fall." Nevertheless, the appellant did not disclose this information by way of affidavit, or otherwise, in response to the motion for summary judgment. As noted in Goodrich Amram, Procedural Rules Service, 2nd, § 1035(d):5, page 460: *"The purpose of this amendment [Pa.R.C.P. 1035(d)] is to assure that the motion for summary judgment may 'pierce the pleading' and to require the opposing party to disclose the facts of his claim or defense."* [Emphasis added in original.] Even if we assume that the undisclosed evidence might have affected the grant of summary judgment, the appellants chose not to disclose the basis for Mrs. Roland's claim with respect to the cause of her fall, and she did so at her own risk.

. . . . .

Rule 1035(d) requires the non-moving party to respond and set forth specific facts showing that there is a genuine issue for trial. Our rules of civil procedure are designed to eliminate the poker game aspect of litigation and compel the players to put their cards face up on the table before the trial begins. The appellant has done nothing to establish a genuine issue of material fact and accordingly summary judgment was properly entered.

*Id.*, 355 Pa.Superior Ct. at 500–01, 513 A.2d at 1033–34 (footnote omitted).

In the instant case, the trial court found appellants failed to present facts to support their contention the learned intermediary doctrine does not apply and, therefore, Searle was entitled to summary judgment as a matter of law because the doctrine controls liability in cases such as this.

The foundation of the doctrine was propounded in *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971), where the Supreme Court dealt with the issue of the duty of drug manufacturers to warn of potentially dangerous side effects of their products and to whom the warning must be given. In reference to prescription drugs, the Court said, "[s]ince the drug was available only upon prescription of a duly licensed physician, the warning required is not to the general public or to the patient, but to the prescribing doctor." *Id.* at 285, 282 A.2d at 220.

This Court discussed the rationale of the rule from *Incollingo* in *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 307 A.2d 449 (1973):

It is for the prescribing physician to use his own independent medical judgment, taking into account the data supplied to him from the drug manufacturer, other medical literature, and any other source available to him, and weighing that knowledge against the personal medical history of his patient, whether to prescribe a given drug.

*Id.*, 224 Pa.Superior Ct. at 431, 307 A.2d at 457. Thus, the information supplied by the drug manufacturer is only one source a physician must consult and he is expected to make an independent medical judgment in determining whether a given drug is appropriate for a particular patient.

More recently, this Court was faced again with the question of who has the duty to warn the *user* of a prescription drug and whether the manufacturer may be liable.

It is clear that the manufacturer of a prescription drug known to be dangerous for its intended use, has "a duty to exercise reasonable care to inform those for whose use the article [was] supplied of the facts which make [the product] likely to be dangerous." *Incollingo v. Ewing, supra,* 444 Pa. at 285 n. 8, 282 A.2d at 220 n. 8. However, the warnings which are required to be given by the manufacturer must be directed to the physician, not the patient-consumer. This is so because it is the duty of the prescribing physician to be fully aware of (1) the characteristics of the drug he is prescribing, (2) the amount of the drug which can be safely administered, and (3) the different medications the patient is taking. It is also the duty of the prescribing physician to advise the patient of any dangers or side effects associated with the use of the drug as well as how and when to take the drug.

*Makripodis v. Merrell–Dow Pharmaceuticals, Inc.,* 361 Pa.Super. 589, 596, 523 A.2d 374, 378 (1987).

 The line of cases setting forth the learned intermediary doctrine make it clear that summary judgment in favor of Searle was appropriate, absent facts by appellants raising the question of whether Searle adequately warned Dr. Cutler. A manufacturer will be held liable only if he fails to exercise reasonable care to inform the one for whose use the product is supplied of the facts which make it likely to be dangerous. *White v. Weiner,* 386 Pa.Super. 111, 562 A.2d 378 (1989). Although all the cases cited herein concern prescription drugs, we hold that the law is equally controlling in cases such as this where a doctor prescribes a contraceptive. Therefore, appellants could not rely on unsupported allegations in response to Searle's motion for summary judgment but were required to introduce facts tending to show Searle failed to exercise reasonable care in informing Dr. Cutler of the dangers of the Cu–7.

■ The trial court found there was no dispute that Searle sent and Dr. Cutler received the physician's insert for each Cu-7 he prescribed for Mrs. Brecher. The pertinent language of the insert is as follows:

WARNINGS

*Pelvic Infection:* An increased risk of pelvic inflammatory disease associated with use of IUDs has been reported. While unconfirmed, this risk appears to be greatest for young women who are nulliparous and/or who have a multiplicity of sexual partners. Salpingitis can result in tubal damage and occlusion thereby threatening future fertility. Therefore it is recommended that patients be taught to look for symptoms of pelvic inflammatory disease. The decision to use an IUD in a particular case must be made by the physician and the patient with the consideration of a possible deleterious effect on future fertility. Pelvic infection may occur with a Cu-7 in situ and at times result in the development of tubo-ovarian abscesses or general peritonitis. The symptoms of pelvic infection include: new development of menstrual disorders (prolonged or heavy bleeding), abnormal vaginal discharge, abdominal or pelvic pain, dyspareunia, fever. The symptoms are especially significant if they occur following the first two or three cycles after insertion. Appropriate aerobic and anaerobic bacteriologic studies should be done and antibiotic therapy initiated promptly. If the infection does not show marked clinical improvement within 24 to 48 hours, the Cu-7 should be removed and the continuing treatment reassessed on the basis of the results of culture and sensivity [sic] tests.

ADVERSE REACTIONS

Pelvic infection including salpingitis with tubal damage or occlusion has been reported. This may result in future infertility.

(Slip Op. at p. 7.)

Dr. Cutler stated he was aware of the possible side affects and that he did read Searle's insert and it was

consistent with his understanding from other sources of the risks involved with the use of the Cu–7. *See* Slip Op. at p. 8.

> Indeed, Dr. Cutler remarked several times that he had a complete and independent awareness of the complications from which Plaintiff suffers, and he indicated that he chose this device based on his own professional judgment and Mrs. Brecher's preferences. (Deposition of Dr. Cutler, p. 62).

(Slip Op. at p. 10.)

Although appellants argue the physician's insert was insufficient to warn of the risks of pelvic infection and infertility, the deposition testimony of Dr. Cutler compels us to find the warnings were adequate. Furthermore, appellants failed to factually support their assertion that the aggressive promotion of the Cu–7 nullified the warnings as to Dr. Cutler, therefore, appellants' arguments against entry of summary judgment must fail.

Order affirmed.