Rowan PARKINSON, and Rowan Parkinson, as Executor of the Estate of Shirley Lee Parkinson a/k/a Shirley L. Parkinson a/k/a Shirley Parkinson, Deceased, Plaintiffs,

v.

GUIDANT CORPORATION and/or Advanced Cardiovascular Systems, Inc., Defendants.

No. 01–CV–1330.

United States District Court, W.D. Pennsylvania.

March 22, 2004.

743

Louis M. Tarasi, Jr., Tarasi, Tarasi & Fishman, P.C., Pittsburgh, PA, for Plaintiff.

Nina M. Gussack, Barry H. Boise, Sharon DiPaolo, Pepper Hamilton LLP, Philadelphia, PA, for Defendants.

## OPINION

DIAMOND, District Judge.

Rowan Parkinson and Shirley Parkinson[1] ("plaintiffs"), commenced this products liability action against Guidant Corporation and Advanced Cardiovascular Systems, Inc. ("ACS") seeking recovery

---

**1.** Shirley Lee Parkinson passed away in 2002. Subsequently, an order was entered substituting as plaintiff Rowan Parkinson, as Executor of the Estate of Shirley Parkinson, for Shirley Parkinson.

for injuries sustained by Rowan Parkinson when a guidewire manufactured by defendant ACS fractured during the course of an angioplasty procedure on May 11, 1999. Plaintiffs' complaint sets forth claims against defendants for negligence (Count I), strict liability under design defect, manufacturing defect, and failure to warn theories (Count II), breach of warranty (Count III) and loss of consortium (Count IV).

The parties are quite familiar with all of the relevant background pertaining to these motions and it will not be restated in detail here except to the extent relevant to the analysis of defendants' respective bases for summary judgment.

Presently before the court is defendants' motion for summary judgment (Document No. 42) and supplemental motion for summary judgment (Document No. 73). Defendants' initial motion[2] seeks summary judgment on all of plaintiffs' claims on numerous bases: (1) plaintiffs' strict liability and implied warranty claims are barred under Comment K to Restatement (Second) Torts § 402A; (2) plaintiffs' failure to warn claim is barred by the "learned intermediary doctrine"; (3) plaintiffs' design defect claim is precluded because defendants' life saving medical device is not unreasonably dangerous; (4) plaintiffs' negligence and manufacturing defect claims are barred because plaintiffs have not identified a specific defect or negligent act; (5) plaintiffs' negligence and strict liability claims are barred because plaintiffs have failed to show proximate causation; (6) plaintiffs' breach of express warranty claim is precluded because plaintiffs cannot prove reliance; (7) plaintiffs' loss of consortium claim is precluded because it is derivative of plaintiffs' other non-viable claims; and (8) all claims against Guidant Corporation are barred because ACS designed, manufactured and sold the guidewire at issue.

Upon due consideration of the parties' briefs and the record evidence, the court finds that defendant Guidant Corporation is entitled to summary judgment on all of plaintiffs' claims. The court also finds that defendant ACS is entitled to summary judgment on plaintiffs' strict liability and breach of warranty claims. However, the court believes that plaintiffs are entitled to proceed to trial, against ACS only, on a negligence claim for failure to properly prepare the guidewire, as well as on the derivative loss of consortium claim. Accordingly, for the following reasons, defendants' motions will be granted in part and denied in part.

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to the party's claim and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying evi-

---

**2.** Defendants' supplemental motion was filed following the results of destructive testing on the subject guidewire and the filing of supplemental reports by plaintiffs' experts. In es- sence it sets forth additional arguments for summary judgment on plaintiffs' manufacturing and design defect theories.

dence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial,*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*quoting* Fed. R.Civ.P. 56(a), (e)) (emphasis in *Matsushita*). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable, or not significantly probative, summary judgment should be granted. *Id.* at 249–250, 106 S.Ct. 2505.

## *Analysis*

### I. *Claims Against Guidant Corporation*

As an initial matter, the court finds that defendant Guidant Corporation is entitled to summary judgment on all of plaintiffs' claims. The parties agree that defendant ACS is a wholly owned subsidiary of Guidant Corporation. However, it is ACS that designs, manufactures, distributes and sells medical devices including the guidewire at issue in this case. Pretrial Stipulation, ¶ III.2. At least for purposes of this lawsuit, Guidant has no role other than as ACS's parent corporation.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (internal citation omitted). Accordingly, mere ownership of a subsidiary does not justify the imposition of liability on the parent for acts of the subsidiary. *Pearson v. Component Technology Corp.,* 247 F.3d 471, 484 (3d Cir. 2001). It is only where the parent corporation dominates a subsidiary to such a degree that the subsidiary is a mere instrumentality of the parent or amounts to a sham corporation that the corporate existence of the subsidiary may be disregarded. *St. Joseph Hospital v. Berks Co. Bd. of Assessment Appeals,* 709 A.2d 928, 936–37 (Pa.Cmwlth.1998).

Here, plaintiffs have set forth no facts, or even advanced any argument, that ACS is nothing more than the alter ego or a mere instrumentality of Guidant. Instead, plaintiffs merely assert that Guidant should be held liable under the sweeping definition of "seller" contained in § 402A of the Restatement (Second) Torts.[3] This is insufficient to saddle Guidant with liability. Rather, it is up to plaintiffs to prove that Guidant, as parent, controlled its subsidiary ACS to such a degree that ACS was a mere instrumentality or alter ego of Guidant. *See Jiffy Lube International, Inc. v. Jiffy Lube of PA, Inc.,* 848 F.Supp. 569 (E.D.Pa.1994); *Stinson v. GAF Corp.,* 757 F.Supp. 644 (W.D.Pa.1990).

**3.** Comment F to § 402A provides that the section "applies to any person engaged in the business of selling products for use or consumption." This definition has been applied broadly in Pennsylvania to include "all suppliers of a defective product in the chain of distribution, whether retailers, part makers, assemblers, owners, sellers, lessors, or any other relevant category." *Burch v. Sears, Roebuck & Co.,* 320 Pa.Super. 444, 467 A.2d 615, 621 (1983). However, plaintiff has not cited, nor has the court found, any authority in Pennsylvania suggesting that parent corporations of suppliers in the chain of distribution should be liable for the acts of their independent subsidiaries, nor any authority suggesting that the general principle that mere ownership does not make a parent liable for the acts of its subsidiary ceases to apply in strict liability cases.

As plaintiffs have failed to adduce any facts of dominance or control of ACS by Guidant to warrant piercing of the corporate veil, ACS and Guidant must be considered separate entities. *See AL Tech Specialty Steel Corp. v. Allegheny International Credit Corp.*, 104 F.3d 601, 608 (3d Cir.1997). Accordingly, Guidant is entitled to summary judgment on all of plaintiffs' claims, as the guidewire at issue in this case was designed, manufactured and sold by ACS.

## II. *Strict Liability*

The court first will address Count II of plaintiffs' complaint which asserts a cause of action for strict liability. The Pennsylvania Supreme Court has adopted Section 402A of the Restatement (Second) of Torts as the law of strict products liability in Pennsylvania. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966).[4]

■■■ Pennsylvania law requires that a plaintiff prove two elements in a strict product liability action: that the product was defective and that the defect was a substantial factor in causing the injury.[5] *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 696 A.2d 1169, 1172 (1997). There are three different types of defective condition that can give rise to a strict liability claim: design defect, manufacturing defect and failure-to-warn defect. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995). In this case, plaintiffs have advanced all three theories of strict liability.

■■■ ACS has moved for summary judgment on Count II of plaintiffs' complaint on the grounds that plaintiffs' strict liability claims are barred by comment K to § 402A. Upon review, the court agrees that comment K does preclude plaintiffs' claim against ACS for strict liability.

Comment K to § 402A addresses "unavoidably unsafe products", i.e., "products that, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use." The comment provides that such products, properly prepared and accompanied by proper directions and warnings, are not defective nor unreasonably dangerous. *Id.*

Pennsylvania courts adhere to comment K in prescription drug liability cases. In *Hahn v. Richter*, 543 Pa. 558, 673 A.2d 888, 889–90 (1996), the Pennsylvania Supreme Court recognized that comment K "denies application of strict liability to products such as prescription drugs, which although dangerous in that they are not without medical risks, are not deemed defective and unreasonably dangerous when marketed with proper warnings."

Plaintiffs, while acknowledging that comment K applies to cases involving prescription *drugs* in Pennsylvania, contend that comment K should not apply to ACS's prescription guidewire as the Pennsylvania Supreme Court has not yet extended comment K to cover prescription medical devices. The court finds plaintiffs' argument unpersuasive.

4. Section 402A of the Restatement provides in relevant part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is ex-

pected to and does reach the user or consumer without substantial change in the condition in which it is sold ....

5. Under Pennsylvania law, the burden of proving "unreasonably dangerous" is met by proving both a defective condition and causation. *Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454, 458 (1992).

While it is true that no Pennsylvania court expressly has applied comment K to prescription medical devices, numerous courts in the Eastern District of Pennsylvania, applying Pennsylvania law, have predicted that the Pennsylvania Supreme Court will extend comment K to such devices. For example, in *Taylor v. Danek Medical, Inc.,* 1998 WL 962062 (E.D.Pa. December 29, 1998), the court concluded that the Pennsylvania Supreme Court, pursuant to its reasoning in *Hahn,* where it recognized that prescription drugs present a unique set of risks and benefits in that what may be harmful to one patient may be beneficial to another, will determine that prescription medical devices likewise are not covered by § 402A because they present the same "unique set of risks and benefits" as prescription drugs. *See also Davenport v. Medtronic, Inc.,* 302 F.Supp.2d 419 (E.D.Pa.2004); *Murray v. Synthes (U.S.A.), Inc.,* 1999 WL 672937 (E.D.Pa. August 23, 1999).

Upon review of the relevant case law, including *Hahn,* the court agrees with the district courts in the Eastern District of Pennsylvania that the same considerations exempting prescription drugs from the ambit of § 402A equally apply to prescription medical devices. Comment K itself implies as much when it states that the rule applies to "other drugs, vaccines, *and the like,* many of which ... cannot legally be sold except to physicians, or under the prescription of a physician."

Moreover, courts in other jurisdictions that have addressed the issue of whether comment K applies to prescription medical devices overwhelmingly have found in the affirmative. *See, e.g., Adams v. Synthes Spine Co.,* 298 F.3d 1114 (9th Cir.2002) (spinal device); *Phelps v. Sherwood Med. Indus.,* 836 F.2d 296 (7th Cir.1987) (heart catheter); *Brooks v. Medtronic,* 750 F.2d 1227, 1232 (4th Cir.1984) (cardiac pacemaker).

Finally, the drafters of the Restatement (Third) Torts acknowledged the desirability of treating prescription medical devices on par with prescription drugs by combining both into one section dealing with liability for harm caused by defective prescription drugs and medical devices. Restatement (Third) Torts, § 6. While § 6 likewise has yet to be adopted by the Pennsylvania Supreme Court, it does bolster the already formidable rationale for treating prescription drugs and prescription devices alike.

Accordingly, this court predicts that the Pennsylvania Supreme Court likely would find that comment K to § 402A applies as equally to prescription medical devices as it does to prescription drugs. As the Pennsylvania courts already have ruled that comment K bars claims for strict liability under § 402A for prescription drugs, *see Hahn, supra,* this court finds that plaintiffs' strict liability claims under § 402A relating to ACS's prescription medical device likewise are precluded under comment K.

While comment K precludes strict liability, it does contain the following two caveats for unavoidably unsafe products: "Such a product, *properly prepared,* and *accompanied by proper directions and warning,* is not defective, nor is it unreasonably dangerous." (emphasis added). However, the Pennsylvania Supreme Court has ruled that § 402A strict liability is precluded *entirely* for prescription drugs, and, presumably by extension, prescription medical devices. *Hahn,* 673 A.2d at 890–91. Instead, the caveats set forth in comment K are to be evaluated under negligence, not strict liability, principles.

In the context of inadequate warnings, the Pennsylvania Supreme Court has held that "where the adequacy of warnings as-

sociated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, i.e., the manufacturer's negligence, is the *only* recognized basis of liability." *Id.* at 891 (emphasis added); *see also Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984); *Mazur v. Merck & Co., Inc.,* 964 F.2d 1348 (3d Cir.1992). Although no Pennsylvania court has addressed the "properly prepared" caveat to comment K, it must be assumed that, as with inadequate warnings, the only recognized basis of liability for an improperly prepared product likewise is negligence, as the foregoing Pennsylvania cases make clear that § 402A strict liability is not applicable at all to cases governed by comment K.[6]

Thus, because § 402A strict liability does not apply to ACS's guidewire, a prescription medical device, ACS is entitled to summary judgment on Count II of plaintiffs' complaint. In order to impose liability upon ACS for the improper preparation of the wire or for inadequate warning, plaintiffs will have to establish negligence. The court now will turn to Count I of plaintiffs' complaint, which pleads a cause of action for negligence, to address these issues.

### III. *Negligence*

Count I of plaintiffs' complaint asserts a cause of action for negligence. In particu-lar, plaintiffs have alleged that ACS was negligent, *inter alia,* in manufacturing the wire and in failing to warn. Applying the principles applicable under Pennsylvania law to plaintiffs' negligence claims, the court finds that ACS is entitled to summary judgment on a negligent failure to warn claim. However, the court believes that plaintiffs have set forth sufficient facts, viewed in a light most favorable to plaintiffs, to survive summary judgment on a negligence claim for failure to properly prepare the subject guidewire.

■ First, plaintiffs' negligent failure to warn claim fails as a matter of law.[7] In determining what constitutes proper warnings for unavoidably unsafe products under comment K to § 402A, the Pennsylvania Supreme Court has instructed that the standard of care required is that set forth in Restatement (Second) Torts § 388 dealing with liability of a supplier of a chattel known to be dangerous for its intended use. *See Hahn,* 673 A.2d at 890. Accordingly, under Pennsylvania law, "a manufacturer is liable only if he fails to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous." *Baldino,* 478 A.2d at 810.

■ Under Pennsylvania's "learned intermediary doctrine", a prescription drug manufacturer may meet its duty to warn

---

**6.** The court recognizes that Pennsylvania law on this issue is somewhat unique and other jurisdictions have held that comment K to § 402A precludes only design defect strict liability claims while permitting manufacturing defect and failure-to-warn defect strict liability claims under comment K's caveats. *See, generally, Frumer & Friedman, Products Liability,* § 12.01[4] (2003). The Restatement (Third) Torts § 6 also recognizes a manufacturing defect theory for prescription drugs and medical devices. However, this court, sitting in diversity jurisdiction, is bound by Pennsylvania law, and the Pennsylvania Su-preme Court unambiguously has held that § 402A strict liability does *not* apply in any way to prescription drugs. If ACS is to be held liable for improper preparation or inadequate warnings, liability must be established under negligence principles.

**7.** Whether a product is defective because of a failure to warn is a question of law to be determined by the trial court. *Demmler v. SmithKline Beecham Corp.,* 448 Pa.Super. 425, 671 A.2d 1151, 1154 (1996).

by providing an adequate warning to a "learned intermediary" as opposed to the general public or individual users. *Mazur*, 964 F.2d at 1355. Thus, where drugs, or in this case, a medical device, are available only through a prescription, the warning required is not to the general public or to the patient, but to the prescribing doctor. *Baldino*, 478 A.2d at 812.

In this case, ACS provided physicians who utilize its guidewire with Instructions for Use, a list of instructions and a warning relating to the use of the guidewire. Defendants' Statement of Undisputed Facts at ¶¶ 9, 10, 16. The warnings expressly include a statement that "[t]orquing a guide wire against resistance may cause guide wire damage and/or guide wire tip separation." *Id.* at ¶ 16. Dr. Moy, the physician who performed plaintiff's procedure, unequivocally testified that he was familiar with those warnings prior to performing the procedure on plaintiff and that, as an interventional cardiologist, he was familiar with the concept of tip separation. *Id.* at ¶ 19. Plaintiffs dispute none of these facts. Plaintiff's Response to Defendants' Statement of Undisputed Facts.

■ Based on the foregoing undisputed evidence, the court must conclude as a matter of law that the warning issued by ACS to Dr. Moy, a learned intermediary, was not inadequate. Accordingly, ACS met the standard of care required under Restatement (Second) Torts § 388 and defendants are entitled to summary judgment on plaintiffs' negligent failure to warn claim. *See, e.g., Brecher v. Cutler*, 396 Pa.Super. 211, 578 A.2d 481, 486 (1990) (affirming summary judgment in favor of defendant manufacturer finding that warning was adequate where doctor stated he was aware of possible side effects of medical device and that he had read the provided insert containing warnings).

Conversely, the court finds that plaintiffs have set forth sufficient facts showing a genuine issue for trial under a negligence claim for improper preparation of the subject guidewire. As a result, summary judgment on such a claim would be inappropriate.

■ In a negligence product liability claim, the plaintiff must prove fault of the manufacturer, an element not required in strict liability law. *Harsh v. Petroll*, 840 A.2d 404, 415–16 (Pa.Cmwlth.2003). Under Pennsylvania law, in a products liability suit based upon negligence, the plaintiff must prove that the manufacturer owed a duty to the plaintiff; that the manufacturer breached that duty; and such breach was the proximate cause of plaintiff's injuries. *Dauphin Deposit Bank & Trust v. Toyota*, 408 Pa.Super. 256, 596 A.2d 845, 849–50 (1991); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir.2000).

■ Here, plaintiffs assert that ACS breached a duty owed to plaintiffs by improperly manufacturing a guidewire which fractured in the course of Rowan Parkinson's angioplasty procedure on May 11, 1999, resulting in emergency bypass surgery to remove the fractured tip and resulting in numerous ongoing health difficulties, particularly with Rowan Parkinson's legs. In support of that claim, plaintiffs have proffered the expert testimony of Norman Johanson, a mechanical engineer, and Ronald Crooks, a metallurgist, who are prepared to testify that the guidewire at issue contained certain manufacturing flaws that weakened the wire making it more susceptible to fracture and which, in fact, resulted in the premature fracture of the guidewire. Moreover, plaintiffs have proffered the expert testimony of Dr. George Moy, the interventional cardiologist who performed Rowan Parkinson's angioplasty procedure,

who is prepared to testify as a medical causation expert that the fractured guide-wire caused the bypass surgery and subsequent injuries to Mr. Parkinson.[8]

The court finds that the foregoing evidence, if believed, is such that a reasonable jury could return a verdict for plaintiffs on a negligence claim. Of course, ACS challenges the conclusions of Moy, Crooks and Johanson, but at the summary judgment stage, the facts must be viewed in a light most favorable to plaintiffs. The ultimate issue of ACS's liability for negligence in improperly preparing the guidewire rests with a jury and is not for this court to make as a matter of law.

Moreover, even if the foregoing direct evidence is insufficient to establish negligence in this case, it may be possible for plaintiffs to establish negligence under the doctrine of res ipsa loquitur. Res ipsa loquitur is a rule of circumstantial evidence which allows a plaintiff, without direct evidence of the elements of negligence, to present a case to the jury based on an inference of negligence. *Toogood v. Owen J. Rogal, DDS, P.C.*, 573 Pa. 245, 824 A.2d 1140, 1146 (2003). Instead of directly proving the elements of ordinary negligence, the plaintiff provides evidence of facts and circumstances surrounding his injury that make the inference of the defendant's negligence reasonable. *Id.*

■ Under the doctrine of res ipsa loquitur, it may be inferred that harm suffered by a plaintiff is caused by a defendant's negligence when: (1) the event is of a kind which ordinarily does not occur in the absence of negligence; (2) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (3)

the negligence is within the scope of the defendant's duty to the plaintiff. *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974); Restatement (Second) Torts § 328D.

As res ipsa loquitur is a circumstantial evidence concept that normally arises in the context of whether a plaintiff is entitled to such a jury instruction after the evidence has been offered, it is somewhat premature for ACS to be challenging the appropriateness of plaintiffs' res ipsa loquitur theory. However, having reviewed the evidence submitted by plaintiffs on the summary judgment record, and viewing that evidence in a light most favorable to plaintiffs, the court believes that plaintiffs have at least raised sufficient facts to avoid summary judgment on their negligence claim.

Plaintiffs have proffered the following facts to support an inference of res ipsa loquitur. First, plaintiffs contend that tip separation of a guidewire is not an incident that ordinarily occurs in the absence of negligence. In support, they will offer the testimony of Moy, who asserts that the tip separation in plaintiff's procedure is the only occurrence of tip fracture in the 650+ procedures in which he has used a guidewire. Plaintiffs also have proffered evidence indicating that Dr. Moy was not negligent in using the guidewire, including deposition testimony of Dr. Lima who conducted plaintiff's bypass operation and reviewed the cinescope of Dr. Moy's angioplasty procedure.

Defendants argue that plaintiffs are not entitled to a res ipsa loquitur inference arising from the foregoing facts because: (1) there is evidence in the record that tip

---

**8.** In a separate opinion, the court has found that the expert testimony of Moy, Crooks and Johanson is admissible and denied defendants' motions *in limine* to exclude their testi-mony under Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

separation conceivably can occur even in the absence of negligence; and (2) there is evidence that the negligence of Moy in torquing or twisting the wire against resistance was the cause of the guidewire fracture.

However, Pennsylvania case law has made clear that, in order to show that an accident was of a type which ordinarily does not occur in the absence of negligence, a plaintiff need not prove that the accident *could not* occur in the absence of negligence, but must only show that it is more probable than not that the plaintiff's injuries were caused by defendant's negligence. *See, e.g., Micciche v. Eastern Elevator Co.*, 435 Pa.Super. 219, 645 A.2d 278, 281 (1994). Likewise, a plaintiff is not required to exclude all other possible causes of the accident beyond a reasonable doubt, rather, again, the plaintiff need only show that the negligence, more probably than not, was that of the defendant. *D'Ardenne v. Strawbridge & Clothier, Inc.*, 712 A.2d 318, 325–26 (Pa.Super.1998).

Pursuant to § 328D of the Restatement (Second) Torts, it is the function of the court to determine whether the res ipsa loquitur inference may reasonably be drawn by a jury or necessarily must be drawn. *See also Smick v. City of Philadelphia*, 161 Pa.Cmwlth. 622, 638 A.2d 287, 290 (1994). However, it is for the jury to determine whether the inference is to be drawn in any case where different conclusions reasonably may be reached. *Id.*

Here, the court, viewing the evidence in a light most favorable to plaintiffs, finds that the res ipsa loquitur inference might reasonably be drawn by a jury in this case, as the evidence before the court is sufficient for a reasonable juror to conclude that the guidewire fracture more probably than not was the result of defendants' negligence in manufacturing it. Of course, whether plaintiffs will be entitled to a res ipsa loquitur charge will be dependent on the evidence actually offered and admitted at trial. However, the court believes that it would be premature at this stage of the litigation to preclude plaintiffs from seeking a res ipsa loquitur charge since the evidence presented at trial may well show that they are entitled to one.

As plaintiffs have proffered sufficient evidence of either direct negligence or circumstantial evidence under res ipsa loquitur which, if believed, would allow a reasonable juror to return a verdict in plaintiffs' favor, ACS's motion for summary judgment on Count I of plaintiffs' complaint will be denied.

## IV. *Breach of Warranty*

Count III of plaintiffs' complaint asserts a claim for breach of warranty under the Pennsylvania Uniform Commercial Code. 13 Pa.C.S.A. §§ 1101 *et seq.* Plaintiffs contend that they relied on ACS's express warranties and the implied warranties of merchantability and fitness for particular purpose, 13 Pa.C.S.A. §§ 2313–2315, and that ACS breached those warranties.

Under Pennsylvania law, an express warranty arises out of the representations or promises of the seller. 13 Pa. C.S.A. § 2313; *see also Sowers v. Johnson & Johnson Medical, Inc.*, 867 F.Supp. 306 (E.D.Pa.1994). An express warranty is created by a seller, *inter alia*, through "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." 13 Pa.C.S.A. § 2313.

Here, plaintiffs' express warranty claim is based entirely on statements from defendants' website. Defendants' Statement of Undisputed Fact ¶ 43, Plaintiffs' Response to Statement of Undisputed Facts ¶ 43; Exhibit J to Defendants'

Statement of Undisputed Facts. Plaintiffs contend that on this website it is expressly warranted that the ACS Hi–Torque Balance Middleweight Guidewire is "[a] top performer in stent delivery and multiple lesion access", that it gives "[m]oderate support and excellent flexibility" and that it has "[g]reat torque transmission for maintaining uncompromised steering in challenging anatomy." Exhibit J to Defendants' Statement of Undisputed Facts.

Even assuming that the statements on defendants' website were express warranties, plaintiffs' breach of express warranty claim must fail as a matter of law because there is no evidence whatsoever in the record that such statements were "part of the basis of the bargain" as required under § 2313.

Although it is recognized that "[w]hat constitutes 'basis of the bargain' is hard to define," *Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 825 (3d Cir.1999), the Third Circuit, in interpreting the New Jersey Uniform Commercial Code express warranty provision[9], has held that "a plaintiff effectuates the 'basis of the bargain' requirement ... by proving that she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise." *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *rev'd on other grounds*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Applying Pennsylvania law, at least one federal court has interpreted the "basis of the bargain" language of the Pennsylvania Uniform Commercial Code as "essentially a reliance requirement".

*Sessa v. Riegle*, 427 F.Supp. 760, 766 (E.D.Pa.1977), *aff'd*, 568 F.2d 770 (3d Cir. 1978).[10]

Here, plaintiffs have offered no proof that anyone read, heard, saw or knew of the statements made on defendants' website prior to the purchase of the guidewire at issue in this case or that they were induced to buy the guidewire based on these statements. Accordingly, there is no evidence that these statements became "part of the basis of the bargain" which would give rise to a claim for breach of express warranty under § 2313. As plaintiffs have failed to adduce facts sufficient to establish the existence of an element essential to their breach of express warranty claim, ACS is entitled to judgment as a matter of law on that claim. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

■ Likewise, the court finds that ACS is entitled to summary judgment on plaintiffs' claims for breach of the implied warranties of merchantability and fitness for particular purpose under Pennsylvania Uniform Commercial Code §§ 2314 and 2315. Unlike an express warranty, which arises out of the representations or promises of the seller, the implied warranties of merchantability and fitness for particular purpose arise by operation of law. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir.1992).

■ However, Pennsylvania courts have held that the nature of prescription drugs precludes claims for breaches of implied warranty for similar reasons as com-

9. The express warranty provision of the New Jersey Uniform Commercial Code at issue in *Cipollone* is identical to the express warranty provision of the Pennsylvania Uniform Commercial Code. *See* N.J.S.A. § 12A:2–313(1).

10. No appellate court in Pennsylvania has yet to address the "basis of the bargain" language under the Pennsylvania Uniform Commercial Code express warranty provision, and the court was unable to find any federal case in this circuit other than *Sessa* addressing the issue under Pennsylvania law. However, the Third Circuit did note that its opinion in *Cipollone* was consistent with the holding in *Sessa*. 893 F.2d at 568 n. 30.

ment K to § 402A precludes a finding that such drugs are "unreasonably dangerous". *See, e.g., Makripodis v. Merrell–Dow Pharmaceuticals, Inc.,* 361 Pa.Super. 589, 523 A.2d 374, 376–77 (1987); *Davenport,* 302 F.Supp.2d at 423–24 and cases cited therein. Moreover, courts have held that identical reasoning also precludes implied warranty claims for prescription medical devices. *Davenport,* 302 F.Supp.2d at 441–42; *Murray,* 1999 WL 672937 at *7; *Taylor,* 1998 WL 962062 at *14.

As noted earlier, this court agrees with the consensus of others that there is no basis in law or logic to treat prescription drugs differently than prescription medical devices. As breach of implied warranty claims for prescription drugs are precluded under Pennsylvania law, breach of implied warranty claims for prescription medical devices also are precluded for identical reasons. Accordingly, ACS is entitled to judgment as a matter of law on plaintiffs' claims for breach of implied warranties of merchantability and fitness for particular purpose.

## V. *Loss of Consortium*

■ Count IV of plaintiffs' complaint asserts a cause of action for loss of consortium. ACS has moved for summary judgment on Count IV on the ground that it is derivative of the claims asserted at Counts I–III, which ACS contended were not viable. *See McNeal v. City of Easton,* 143 Pa.Cmwlth. 151, 598 A.2d 638, 642 (1991) (in order to recover on a loss of consortium claim, party must show defendant is liable to his or her spouse).

However, the court has found that plaintiffs may proceed to trial on a viable claim of negligence. Accordingly, ACS is not entitled to summary judgment on plaintiffs' derivative loss of consortium claim. *See, Darr Construction Co. v. W.C.A.B.,* 552 Pa. 400, 715 A.2d 1075, 1080 (1998)

(while a separate and distinct cause of action, claim for loss of consortium is derivative, emerging from impact of one spouse's injuries upon the other spouse's marital privileges and amenities).

## Conclusion

For the foregoing reasons, the court finds that defendant Guidant Corporation is entitled to summary judgment on all of plaintiffs' claims. In addition, defendant ACS is entitled to summary judgment on Counts II and III of plaintiffs' complaint. However, plaintiffs may proceed to trial on Count I for negligence, as well as Count IV for loss of consortium.

An appropriate order will follow.

## ORDER OF COURT

AND NOW, this 22nd day of March, 2004, for the reasons set forth in the opinion filed this day, IT IS ORDERED that defendants' motion for summary judgment (Document No. 42) and supplemental motion for summary judgment (Document No. 73) be, and the same hereby are, granted in part and denied in part as follows:

IT IS ORDERED that summary judgment be, and the same hereby is, entered in favor of the defendant Guidant Corporation and against the plaintiffs on all of plaintiffs' claims; and,

IT FURTHER IS ORDERED that summary judgment be, and the same hereby is, entered in favor of the defendant ACS and against the plaintiffs on Counts II and III of plaintiffs' complaint.