J. S35013/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANNE RACIOPPI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIVE INSURANCE COMPANY | : | |
| D/B/A A/K/A PROGRESSIVE GARDEN | : | No. 3419 EDA 2015 |
| STATE D/B/A A/K/A PROGRESSIVE | : | |
| ADVANCED INSURANCE COMPANY | : | |

Appeal from the Order Entered, October 8, 2015,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. November Term, 2013, No. 1783

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND MUSMANNO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 11, 2016**

Anne Racioppi appeals from the order of October 8, 2015, entering summary judgment in favor of defendant/appellee, Progressive Insurance Company d/b/a a/k/a Progressive Garden State d/b/a a/k/a Progressive Advanced Insurance Company ("Progressive").  We affirm.

The trial court has set forth the procedural and factual background of this matter as follows:

PROCEDURE

The operative Complaint in this case, the Amended Complaint, consists of two claims:  breach of contract and bad faith.

Appellee-Defendants filed a Motion for Summary Judgment covering both claims on

August 3, 2015. Appellant-Plaintiff filed her Answer on August 28, 2015. Appellee-Defendants filed a Reply on September 9, 2015. This Court entered an Order which granted Appellee-Defendants' Motion on October 8, 2015. Appellant-Plaintiff filed this appeal on October 28, 2015.

BACKGROUND

The action underlying this appeal arose out of a collision that occurred when an automobile, while making a right-hand turn, struck Plaintiff-Appellant as she was riding her bicycle. This accident occurred at or about the intersection of 15th Street and Girard Avenue of Philadelphia, Pennsylvania on September 2, 2010. Plaintiff suffered damages including, inter alia, "a severe fracture of her wrist requiring surgery and internal fixation." Plaintiff's Amended Complaint, ¶7.

The driver of the automobile was insured under a policy of automobile insurance issued by Geico Indemnity Company ("Geico"). Geico, not a defendant in this case, offered to tender its liability policy limit of fifteen thousand dollars ($15,000.00). Appellant-Plaintiff's damages exceed the limits of the Geico policy. Therefore Appellant-Plaintiff sought recovery through underinsured benefits of her alleged automobile insurance policy, which was denied. (See SJM, Exh. G).

The following five paragraphs are, when viewed in a light most favorable to Appellant-Plaintiff, the relevant facts of her insurance with Appellee-Defendants.

(1) Appellant-Plaintiff was covered under an insurance policy, which included underinsured motorist coverage, with Appellee-Defendant Progressive Garden State from February 6, 2010 to August 6, 2010 (policy #48169100);

(2) Appellant-Plaintiff on some date prior to June 24, 2010 informed Progressive Garden State

that she was moving from New Jersey to Philadelphia and she provided her Philadelphia address. See SJM, Exh. B, 58:24-59:2 (informed online).

(3) Appellee-Defendant Progressive Garden State issued a change in insurance policy information, number #48169100-2, effective July 28, 2010, under Appellant-Plaintiff's Philadelphia address, for the policy period of February 6, 2010 to August 6, 2010. See SJM Reply, Exh. D. Appellant-Plaintiff remained covered under this policy (#48169100-2) because the period simply overlaps with her coverage under policy #48169100.

(4) Appellee-Defendant Progressive Garden State offered, on July 29, 2010, to Appellant-Plaintiff a renewal insurance policy number #48169100-3 for the period of August 6, 2010 to February 6, 2011. See SJM Reply, Exh. E.[Footnote 1] Appellant-Plaintiff neither alleges nor offers evidence that she paid for this policy to renew. Appellant-Plaintiff's explanations as to why she did not render payment are that: (1) the insurer is located in New Jersey, and (2) that she did not obtain a Pennsylvania driver's license for over a month after moving to Philadelphia; as it turns out, on the very date of the accident, just hours before the accident. See (1) SJM, Exh. B, 53:13-54:11, and (2) SJM, Exh. B, 22:16-23:9.[Footnote 2]

> [Footnote 1] Appellee-Defendant submitted into evidence prior renewal notices under #48169100-3, dated June 24, 2010 and July 21, 2010. See SJM, Exh. B, p. 23-25.

> [Footnote 2] The Declarations Page for this insurance policy, #48169100-3, is attached to the operative complaint, which is the Amended Complaint.

(5) Appellant-Plaintiff indeed had an insurance policy, which included underinsured motorist coverage, with Appellee-Defendant Progressive

Advanced Insurance Company for the period of September 3, 2010, the day after her accident, to some indefinite time beyond that date (policy #66385951).

Again, the contract allegedly breached is with Appellee-Defendant Progressive Garden State policy #48169100-3. The breach of contract claim requires no further factual explanation. However, Appellant-[Plaintiff]'s bad faith claim requires elaboration. Her bad faith claim rests on three acts of Defendant(s): (1) the denial of coverage under the alleged contract was made in reckless disregard for the contract, (2) the failure to provide consent to settle with the negligent driver's insurance, and (3) the removal of this case to federal court without justification. See Amended Complaint, ¶¶ 18-33.

The factual basis for the last of the three grounds for the bad faith claim, the trip to and from federal court, requires some further detail. Appellant-Plaintiff's original Complaint, not the operative complaint, listed as Defendant "Progressive Insurance Company" with an Ohio address. Plaintiff was living in New Jersey at that time, so Progressive Insurance Company removed the case to federal court. The federal court remanded the case back to state court, upon agreement of the parties, once it was discovered who Appellant-Plaintiff was trying to sue. Appellant-Plaintiff filed an Amended Complaint with a bad faith claim involving the round trip from state to federal court and then back to state court. The Amended Complaint also contained a new statement of the identity of Defendant--"Progressive Insurance Company d/b/a a/k/a Progressive Garden State d/b/a a/k/a Progressive Advanced Insurance Company."[Footnote 3]

> [Footnote 3] Appellant-Plaintiff uses the term "Progressive" in the singular to refer to the defendant(s), while the Appellee-Defendants say that they are Progressive Garden State (with a New Jersey address) and Progressive

> Advanced Insurance Company (with a Pennsylvania address). Appellant-Plaintiff has not argued, much less offered evidence, that said Appellee-Defendants are not the proper parties on the defense side. This issue will come up later in this opinion in the legal analysis of the bad faith claim.

Trial court opinion, 12/14/15 at 1-4.

Appellant has raised the following issues for this court's review on appeal:

> 1. Did the Trial Court err in dismissing Appellant's Underinsured Motorist [("UIM")] Claim as a matter of law where Appellees failed to comply with statutory law respecting notice of cancellation to an insured, Appellant had no actual notice of the cancellation, and Appellant reasonably relied upon Appellees' statements which lead her to believe she was insured on the day of her accident?
>
> 2. Did the Trial Court err as a matter of law in granting Appellees summary judgment on Appellant's bad faith claim where Appellant avers that Appellees acted in bad faith in the denial of her [UIM] claim and in removing the case below to federal court with absolutely no legitimate basis whatsoever to do so?

Appellant's brief at 8.

> Summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b), 42 Pa.C.S.A. When considering a motion for summary judgment, the trial court must examine the record in the light most favorable to the non-moving

> party, accept as true all well-pleaded facts in the non-moving party's pleadings, and give him the benefit of all reasonable inferences drawn therefrom. **_Dibble v. Security of America Life Ins._**, 404 Pa.Super. 205, 590 A.2d 352 (1991); **_Lower Lake Dock Co. v. Messinger Bearing Corp._**, 395 Pa.Super. 456, 577 A.2d 631 (1990). Summary judgment should be granted only in cases that are free and clear of doubt. **_Marks v. Tasman_**, 527 Pa. 132, 589 A.2d 205 (1991). We will overturn a trial court's entry of summary judgment only if we find an error of law or clear abuse of discretion. **_Lower Lake Dock Co._**, **_supra_**.

**_DeWeese v. Anchor Hocking Consumer and Indus. Products Group_**, 628 A.2d 421, 422-423 (Pa.Super. 1993).

> It is well-settled that a party may not defeat a motion for summary judgment by relying on the allegations of his complaint. Rather, he must present depositions, affidavits, or other acceptable documents that show there is a factual issue for a jury's consideration. **_Brecher v. Cutler_**, 396 Pa.Super. 211, 578 A.2d 481 (1990).

**_Id._** at 424.

In her first issue on appeal, appellant claims that Progressive failed to provide proper notice of cancellation or non-renewal pursuant to 40 P.S. § 991.2006 (Act 68).[1] However, Act 68's notice requirements do not apply

---

[1] 40 P.S. § 991.2006 (Act 68) states:

> A cancellation or refusal to renew by an insurer of a policy of automobile insurance shall not be effective unless the insurer delivers or mails to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew. The notice shall:

(1) Be in a form acceptable to the Insurance Commissioner.

(2) State the date, not less than sixty (60) days after the date of the mailing or delivery, on which cancellation or refusal to renew shall become effective. When the policy is being cancelled or not renewed for the reasons set forth in section 2004(1) and (2), however, the effective date may be fifteen (15) days from the date of mailing or delivery.

(3) State the specific reason or reasons of the insurer for cancellation or refusal to renew.

(4) Advise the insured of his right to request in writing, within thirty (30) days of the receipt of the notice of cancellation or intention not to renew and of the receipt of the reason or reasons for the cancellation or refusal to renew as stated in the notice of cancellation or of intention not to renew, that the Insurance Commissioner review the action of the insurer.

(5) Either in the notice or in an accompanying statement advise the insured of his possible eligibility for insurance through the automobile assigned risk plan.

(6) Advise the insured that he must obtain compulsory automobile insurance coverage if he operates or registers a motor vehicle in this Commonwealth, that the insurer is notifying the Department of Transportation that the insurance is being cancelled or not renewed and that the insured must notify

where the insurer has offered to renew the policy and its insured has refused to pay the premiums. Section 2002(c) of Act 68 provides, in relevant part, as follows:

> (c)    Nothing in this article shall apply:
>
> (1)    If the insurer has manifested its willingness to renew by issuing or offering to issue a renewal policy, certificate or other evidence of renewal or has manifested such intention by any other means.
>
> (2)    If the named insured has demonstrated by some overt action to the insurer or its agent that he wishes the policy to be cancelled or that he does not wish the policy to be renewed.

---

> the Department of Transportation that he has replaced said coverage.
>
> (7)    Clearly state that when coverage is to be terminated due to nonresponse to a citation imposed under 75 Pa.C.S. § 1533 (relating to suspension of operating privilege for failure to respond to citation) or nonpayment of a fine or penalty imposed under that section coverage shall not terminate if the insured provides the insurer with proof that the insured has responded to all citations and paid all fines and penalties and that he has done so on or before the termination date of the policy.

40 P.S. § 991.2002(c)(1-2). ***See Federal Kemper Ins. Co. v. Com., Ins. Dept.***, 500 A.2d 796 (Pa. 1985) (knowing refusal to pay a premium is an "overt act" evidencing a desire to cancel the policy).

> Where the cancellation of a policy is relied upon as an affirmative defense, the burden is on the defendant (insurer) to prove an effective cancellation of the policy prior to the loss. The crux of the insurer's burden turns on whether it can prove that the insured had a clear and precise intent to cancel the policy prior to the loss.

***Scott v. Southwestern Mut. Fire Ass'n***, 647 A.2d 587, 590 (Pa.Super. 1994) (citations omitted).

Here, Progressive sent appellant multiple renewal notices in late June and July 2010, by both regular mail and e-mail, warning her that her coverage was due to expire on August 6, 2010, unless Progressive received payment by that date. Renewal reminders were sent to appellant's address in New Jersey, as well as her new address in Philadelphia. Appellant does not dispute that she received these notices. Appellant alleges that she was confused because she moved to Pennsylvania in late July 2010 and was told that she would have to purchase a new policy. However, this does not explain why appellant failed to make any payment for almost a month, until September 3, 2010, the day after the accident. Appellant received additional notices after August 6, 2010, notifying her that her policy had lapsed. Appellant failed to renew her policy despite these multiple notices. Appellant's knowing refusal to pay premiums was an "overt act" evidencing

her intent to cancel the policy. ***Federal Kemper***. As there was no policy in effect on the date of the accident, September 2, 2010, Progressive had no duty to pay UIM benefits. There was no contract in existence between the parties. Therefore, the trial court did not err in granting summary judgment for Progressive on appellant's breach of contract claim.

We now turn to appellant's allegations of bad faith. The remedy for an insurer's bad faith conduct has been codified at 42 Pa.C.S.A. § 8371, which provides:

> **§ 8371.  Actions on insurance policies**
>
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

"This Court has noted that the bad faith statute extends to the handling of UIM claims, despite their similarity to third party claims." ***Condio v. Erie Ins. Exch.***, 899 A.2d 1136, 1142 (Pa.Super. 2006), ***appeal denied***, 912 A.2d 838 (Pa. 2006) (citations omitted).

> To prove bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not

> have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim. ***Terletsky v. Prudential Property and Casualty Insurance Company***, 437 Pa.Super. 108, 649 A.2d, 680, 688 (1999). Bad faith claims are fact specific and depend on the conduct of the insurer ***vis à vis*** the insured. ***Williams v. Nationwide Mutual Ins. Co.***, 750 A.2d 881, 887 (Pa.Super. 2000).

***Condio***, 899 A.2d at 1143. "[W]hen faced with a [UIM] claim, an insurance company's duty to its insured is one of good faith and fair dealing." ***Id.*** at 1145. "[T]he broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation." ***O'Donnell ex rel. Mitro v. Allstate Ins. Co.***, 734 A.2d 901, 906 (Pa.Super. 1999). "[W]e refuse to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured." ***Id.*** However, "in [the] absence of evidence revealing dishonest purpose, it is not bad faith for [an] insurer to aggressively investigate and protect its interests[.]" ***Id.*** at 910, citing ***Jung v. Nationwide Mut. Fire Ins. Co.***, 949 F.Supp. 353, 360 (E.D.Pa. 1997).

Appellant argues that Progressive acted in bad faith by failing to comply with the statutory requirements for notice of cancellation or non-renewal. (Appellant's brief at 23.) As discussed above, appellant's policy lapsed due to non-payment. Progressive offered to renew her policy, and she refused to make payment. This is not a basis for a bad faith claim.

Appellant also argues that Progressive's removal of the case to federal court constituted bad faith. As the trial court explained, appellant initially sued Progressive Insurance Company, with an Ohio address. (Trial court opinion, 12/14/15 at 8.) Since there was diversity of citizenship, Progressive removed the case to federal court. Later, when it became apparent who appellant was trying to sue (Progressive Garden State, a dual citizen of Ohio and New Jersey), Progressive agreed to remand the case back to state court. However, there is no evidence that Progressive acted in bad faith by removing the suit to federal court; in fact, the federal district court denied appellant's motion for attorney's fees. Progressive's removal to federal court was a litigation tactic that had nothing to do with its denial of UIM benefits under the insurance contract. The trial court did not err in granting summary judgment for Progressive on appellant's bad faith claims.[2]

Order affirmed.

Judgment Entered.

_____

JosephD.Seletyn,Esq.
Prothonotary

Date: 5/11/2016

---

[2] Although appellant does not argue the issue in her brief, she also alleged bad faith for Progressive's refusal to provide consent to settle with Geico, the tortfeasor's insurer. Since appellant had no coverage with Progressive at the

time of the accident, it had no authority to issue consent.  (Trial court opinion, 12/14/15 at 7.)