**Susan I. KELLY, Administratrix and Personal Representative of the Estate of Gerald A. Kelly, Deceased, on Behalf of Said Decedent's Heirs–At–Law and Next–Of–Kin and on Her Own Behalf, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

Civ. A. No. 94–2579.

United States District Court, E.D. Pennsylvania.

July 26, 1996.

466

Robert J. Mongeluzzi, Robert C. Daniels, Daniels, Saltz, Mongeluzzi and Barrett, Ltd., Philadelphia, PA, for plaintiff.

Robert Toland, II, Joseph V. Pinto, Evan S. Eisner, White and Williams, Philadelphia,

467

PA, Paul Hultin, Christopher J. Meyer, Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, CO, for defendant.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Susan I. Kelly ("Kelly"), administratrix and personal representative of the Estate of Gerald A. Kelly, Deceased, on behalf of decedent's heirs-at-law and next-of-kin and on her own behalf, has brought this action against defendant Ford Motor Company ("Ford"). Plaintiff asserts several claims against defendant, including a claim for punitive damages, arising out of an accident which occurred on June 20, 1992, when plaintiff's decedent, driving a Ford Bronco II ("Bronco II"), suffered fatal injuries claimed to be caused by the defective product designed and manufactured by defendant. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $50,000.

Currently before this Court is the motion of defendant for partial summary judgment, pursuant to Fed.R.Civ.P. 56, as to the substantive law applicable to plaintiff's claim for punitive damages. (Document No. 20) For the following reasons, the motion will be granted.

## I. FACTUAL BACKGROUND

On June 30, 1992, the decedent of plaintiff was killed in an automobile accident that occurred while decedent was operating his Bronco II in an easterly direction on the Pennsylvania Turnpike in Montgomery County, Pennsylvania. Plaintiff and decedent had purchased the Bronco II on September 4, 1986, at a Ford dealership in Morrisville, Pennsylvania. Both plaintiff and decedent were domiciled in Pennsylvania and resided in Bucks County, Pennsylvania at the time of the accident.

Ford is a Delaware corporation with its principal place of business in Dearborn, Michigan. The decision to produce the Bronco II was made by Ford employees in Dearborn, Michigan, as were decisions and activities regarding the design and testing of prototype and production level Bronco II vehicles. Bronco II vehicles were subjected to dynamic tests at Ford's Dearborn Proving Grounds Test Track and the public highways in Michigan. Further, the handling and stability characteristics of the Bronco II's were also tested in Dearborn, Michigan using a computer simulation program that was designed and developed in Ann Arbor, Michigan. The Owner's Manual Supplement and the language of the warning label placed in all Bronco II vehicles were prepared in Michigan.

## II. DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment may be granted when the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, "all reasonable inferences that can be drawn from the record must be viewed in the light most favorable to the party opposing the motion." *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 489 (3d Cir.1994).

Defendant has brought this motion for partial summary judgment on the plaintiff's claim for punitive damages, arguing that there is no genuine issue of material fact and that Ford is entitled to judgment as a matter of law on this issue. Ford asserts that Michigan's substantive law prohibiting punitive damages applies to this case.[1] Plaintiff responds that this Court should apply Pennsylvania law which allows the award of punitive damages.

When choosing between Michigan and Pennsylvania's laws on punitive damages, in a diversity case such as this one, this Court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61

---

1. It is true that Michigan does allow plaintiffs to recover exemplary damages above and beyond normal compensatory damages in cases where a plaintiff has suffered injured feelings and humiliation because of harm maliciously and wantonly inflicted by the defendant, but the purpose of such exemplary damages is to compensate the plaintiff for whatever injured feelings and humiliation she may have suffered and not to punish the defendant. *See Jackovich v. Gen. Adjustment Bureau, Inc.*, 119 Mich.App. 221, 326 N.W.2d 458 (1982).

S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Pennsylvania has adopted a flexible choice of law methodology which combines contacts analysis and interest analysis. *Carrick v. Zurich–American Ins. Group,* 14 F.3d 907, 909–10 (3d Cir.1994); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964).

■ Before applying this analysis, however, this Court must first determine whether or not a false conflict exists. A false conflict exists where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991); *Eagan v. Jackson,* 855 F.Supp. 765, 777 (E.D.Pa.1994). If there is a false conflict, then there is no need to proceed with the contacts and interest analyses. Instead, the court must apply the law of the state whose interest would be harmed if its laws were not applied. *Lacey,* 932 F.2d at 187.

■ In the instant case, a real rather than false conflict exists. Pennsylvania law allows the award of punitive damages when the conduct complained of is especially egregious. *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1096 (1985). Punitive damages serve the dual purpose of punishing the defendant for misconduct and deterring the defendant and others from engaging in similar misconduct. *Cavalier Clothes, Inc. v. Major Coat Co.,* Civ.A. No. 89–3325, 1991 WL 125179 (E.D.Pa. June 26, 1991). In Michigan, damages may not be awarded to punish the defendant. *Kewin v. Massachusetts Mutual Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50 (1980). The parties have not identified and this Court has not found any Michigan Supreme Court opinion, or any lower Michigan state court opinion, which explicates the purpose behind Michigan's law prohibiting the award of punitive damages. However, we find persuasive other courts' opinions expressing the policy reflected in laws of other states, such as California and Illinois, which do not allow the award of punitive damages. *See In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 594 (7th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *In re Disaster at Detroit Metro. Airport on August 16, 1987,* 750 F.Supp. 793 (E.D.Mich.1989). Based on their explanation of the purpose behind the disallowance of punitive damages, this Court concludes that the law of Michigan prohibiting the award of punitive damages Michigan-domiciled defendants from excessive financial liability. *See Detroit* 750 Supp. at 805. Furthermore, this Court also concludes that "[t]hose states [such as Michigan] which have refused to impose punitive damages on its defendants have done so in order to promote (1) the financial stability of the businesses that conduct their affairs within its borders, and (2) the overall economic well-being of its citizenry." *Id.* If Pennsylvania's law allowing punitive damages were applied, Michigan's policy interests would certainly be impaired. Likewise, if Michigan's law prohibiting punitive damages were applied, then Pennsylvania's interest in punishing and deterring misconduct would not be served. Both jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's laws, and thus, there is no false conflict.

■ Because a real conflict exists in the instant case, this Court must now proceed with the two-part analysis required by Pennsylvania's choice of law rules. First, each state's contacts with the subject of this litigation must be analyzed. Courts applying Pennsylvania's choice of law rules have often turned to the Restatement (Second) of Conflict of Laws for guidance. *See, e.g., Carrick,* 14 F.3d at 909; *Blakesley v. Wolford,* 789 F.2d 236, 239 (3d Cir.1986); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311 (3d Cir.1978). Section 145(2) lists the following contacts that should be taken into account when determining which state has the most significant relationship to the events and parties at issue in a tort claim: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflicts of Law § 145(2), at 414 (1971). The weight of these contacts must be measured

on a qualitative rather than quantitative scale. *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854, 856 (1970).

■ Neither the highest court, nor any other Pennsylvania court, has ruled on the issue of which contacts are relevant for a conflict of law analysis on a punitive damages claim. Therefore, this Court must predict how the Supreme Court of Pennsylvania would rule if called upon to decide this question. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967). In doing so, this Court may consider a range of information, including "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

Other jurisdictions have held that when punitive damages are the subject of a conflict of laws, the domicile or residence of the plaintiff and the place where the injury occurred are not relevant contacts. *See Detroit,* 750 F.Supp. at 805; *Walsh v. Ford,* 106 F.R.D. 378, 408 (D.D.C.1985). Instead, the most critical contacts include the place where the alleged punitive conduct occurred and, if dealing with a corporate defendant, the state of incorporation and its principal place of business. *Cavalier,* 1991 WL 125179, at *5 n. 8.

Comments following § 145 suggest that when analyzing contacts for the purposes of a punitive damages claim, the place where the conduct occurred is especially significant. "If the primary purpose of the tort rule involved is to deter or punish misconduct ... the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship." § 145 cmt. c, at 416. *See Houston N. Hosp. Properties v. Telco Leasing, Inc.,* 688 F.2d 408 (5th Cir.1982) (holding that because the primary purpose of making the exertion of economic duress a tort is deterrence rather than compensation, state where the conduct took

place rather than state where injury occurred was the state of dominant interest).

The court in *Serbin Development Corporation v. North River Insurance Company* predicted, on the basis of choice of law analyses in other jurisdictions that relied on choice of law principles similar to those of Pennsylvania, that the Pennsylvania Supreme Court would adopt a test that focuses on either the place of defendant's conduct or the defendant's state of incorporation or principal place of business. *Serbin Dev. Corp. v. North River Ins. Co.,* Civ.A. No. 85–4273, 1986 WL 4315 (E.D.Pa. Apr. 8, 1986). This Court agrees and follows the reasoning of the court in *Serbin* predicting that the Pennsylvania Supreme Court would consider defendant's contacts to be the relevant contacts in a choice of law analysis for a punitive damages claim.

■ In the instant case, the relevant contacts are Ford's place of incorporation, Ford's principal place of business, and the place where Ford's alleged punitive conduct took place. Delaware is Ford's place of incorporation, while Michigan is Ford's principal place of business. However, more weight should be placed on Ford's contact with Michigan rather than its contact with Delaware. *See* § 145 cmt. e, at 421 ("[A] corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter.").

■ Neither Pennsylvania state courts nor federal courts in the Third Circuit have addressed specifically the scope of a defendant's punitive conduct in regard to the contacts analysis for choice of law on a punitive damages claim. This Court is therefore required to again predict how the Supreme Court of Pennsylvania would rule on this issue. *See McKenna,* 622 F.2d at 663. Holdings from courts in other states and other districts persuade this Court to conclude that the scope of Ford's alleged punitive conduct includes the design and engineering of the Bronco II, as well as the decision-making involved in the development and design of the allegedly defective Bronco II and its components. *See Chicago,* 644

F.2d at 607 (7th Cir.1981) (finding that California is the place of McDonnell Douglas Corporation's alleged misconduct because that is the state where the DC–10 was designed); *White v. Winnebago Indus., Inc.,* 718 F.Supp. 1429 (N.D.Iowa 1989) (finding that Iowa was the place where the conduct causing the injury occurred because that is where the motor home was designed and tested). Assembly and manufacture should not be included in the relevant conduct, however, as plaintiff is not asserting a claim based upon a manufacturing defect. *See* Response of plaintiff, Ex. D, E, and F (expert reports which assert that the accident was caused by the defective or inadequate development and design decisions and inadequate warnings by Ford and not by defective assembly or manufacture).

In the instant case, the evidence is uncontradicted that all of the relevant conduct, including the development activity, design, testing, and decision-making relating to the allegedly defective Bronco II, took place at Ford's headquarters in Dearborn, Michigan. *See* Linovitz Aff. ("Affidavit") (attached to Defendant's Supplement to Motion for Partial Summary Judgment). Plaintiff has not submitted any evidence to prove that this alleged punitive conduct occurred elsewhere.

Plaintiff does argue, however, that the Affidavit contradicts a statement made by Seymour Linovitz in a deposition for a prior case ("Deposition") and requests that this Court reject the Affidavit. The statement made in the Deposition, however, is distinguishable from the statements in the Affidavit. In the Deposition, Linovitz was asked specifically if he was involved in the design of the Bronco II as it relates to handling and stability in the period 1980 to 1983, to which he responded "No, I was not." Linovitz Dep., p. 15. In the Affidavit, Linovitz states that he is familiar with the history of the design and development of the Bronco II and the locations where the developmental activity and decisions relating to the Bronco II took place. Linovitz Aff. at ¶ 2. This Court concludes that Linovitz's familiarity provides him with *knowledge* of the design as it relates to handling and stability. This does not contradict his answer in the Deposition which questioned his personal *involvement* in the design of the Bronco II in relation to its handling and stability. The statements made in the Deposition and the Affidavit are consistent and, thus, this Court accepts Mr. Linovitz's Affidavit as sufficient evidence to prove the location of the alleged punitive conduct.

Plaintiff also argues that the scope of Ford's alleged punitive conduct extends beyond the aforementioned acts to include the placement of the Bronco II into Pennsylvania's stream of commerce. Response of Plaintiff, p. 13. Thus, plaintiff argues, Pennsylvania, not Michigan, is the place where the alleged punitive conduct causing the injury occurred. Plaintiff further argues that although some of Ford's decisions were made in Michigan, Pennsylvania law applies because the injury took place in Pennsylvania, where the intentional sale of a known defective product was felt. *Id.* at 14. Plaintiff relies on *Asplundh Tree Expert Co. v. Pacific Employers Insurance Co.,* Civ.A. No. 90–6976, 1991 WL 147461 (E.D.Pa. July 25, 1991). This reliance is misplaced, however, because in *Asplundh* the punitive damages claim was based on breach of contract and bad faith claims arising out of an insurance coverage dispute, while the punitive damages claim of the plaintiff in this case arises from a product liability tort claim. The Restatement (Second) of Conflict of Laws draws a distinction between tort claims and contract claims in the choice of law context. While § 145, mentioned earlier, lists the relevant contacts for a tort claim, § 188 lists the contacts relevant to an action based upon a contract. These two lists differ significantly from one another. *See* Restatement (Second) of Conflict of Laws § 188 (1969). Because *Asplundh* is clearly distinguishable, its holding is not applicable to the instant case.

■ Turning next to the interest analysis component of Pennsylvania's choice of law framework, this Court must examine the extent to which one state rather than another has demonstrated, through its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law. *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 170 (3d Cir.1980) (citing *McSwain v. McSwain,* 420 Pa. 86, 215

A.2d 677, 682 (1966)). In other words, this Court must explore the policies underlying Michigan and Pennsylvania's respective punitive damages laws.

The state of Michigan has a strong interest in seeing that its domiciliary defendants are protected from excessive financial liability. *Detroit,* 750 F.Supp. at 805. By insulating companies such as Ford, who conduct extensive business within its borders, Michigan hopes to promote corporate migration into its economy. *See Chicago,* 644 F.2d at 614. If Michigan did not provide such protection to corporations, such corporations might refuse to locate and conduct any business in their state. *Detroit,* 750 F.Supp. at 807. However, by providing the protection, through a law prohibiting punitive damages, "Michigan may indeed induce other businesses to enter the state with the assurance that, although responsible for its own torts, a company shall be immune from excessive financial liability." *Id.* Corporate migration will enhance the economic climate and well being of the state of Michigan by generating revenues. *See Chicago,* 644 F.2d at 614. For these reasons, Michigan has a very strong interest in the application of its punitive damages law to the issue of Ford's financial liability in this case. *Detroit,* 750 F.Supp. at 807.

The state of Pennsylvania demonstrates, through its punitive damages law, an interest in punishing defendants who injure its residents and an interest in deterring them and others from engaging in similar conduct which poses a risk to Pennsylvania's citizens. *Cavalier,* 1991 WL 125179, at *5 n. 8. Punishment and deterrence are both compelling reasons to apply Pennsylvania's law on punitive damages.

Both Pennsylvania and Michigan demonstrate equally valid interests in the application of their own punitive damages law to the case at bar. However, because an analysis of the relevant contacts, with regard to plaintiff's claim for punitive damages, reveals that Michigan has the most significant relationship to the events at issue, this Court predicts that the Pennsylvania Supreme Court, applying Pennsylvania choice of law rules, would hold that Michigan's law prohibiting the award of punitive damages applies to the instant case.

## III. CONCLUSION

For the foregoing reasons, the motion of the defendant for partial summary judgment will be granted.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 26th day of July, 1996, upon consideration of the motion of defendant Ford Motor Company for partial summary judgment (Document No. 20), the response of plaintiff thereto, the reply of defendant, the further reply of plaintiff thereto, and the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and other discovery of record, it is hereby **ORDERED,** for the reasons set forth in the foregoing memorandum, that the motion is **GRANTED.** It is **FURTHER ORDERED** that Michigan substantive law governs the claim by plaintiff for punitive damages. And as Michigan substantive law does not allow punitive damages in a products liability case such as this one, as explained in the foregoing memorandum, the claim for punitive damages is **DENIED** and **JUDGMENT** is hereby entered in favor of defendant Ford Motor Company and against plaintiff Susan I. Kelly, administratrix and personal representative of the Estate of Gerald A. Kelly, deceased, on the claim by plaintiff for punitive damages.

This is not a final Order.