Terry BEARDEN

v.

WYETH, et al.

No. CIV.A. 05–4507.

United States District Court, E.D. Pennsylvania.

May 5, 2006.

Derek Braslow, Harris L. Pogust, Robert N. Wilkey, Cuneo, Pogust & Mason, LLP, Conshohocken, PA, Derek T. Braslow, Sherman, Silverstein, Kohl, Rose and Podolsky, Pennsauken, NJ, for Terry Bearden.

Amber B. Shushan, Jones Day, Atlanta, GA, David B. Alden, Mark Herrmann, Jones, Day, Reavis and Pogue, Cleveland, OH, Reetu Dandora, Reed Smith LLP, Philadelphia, PA, for Wyeth, et al.

### ORDER

DALZELL, District Judge.

■ AND NOW, this 5th day of May, 2006, upon consideration of the parties' joint stipulation of facts, defendants' motion to dismiss and for summary judgment[1] (docket entry # 33), plaintiff's re-

---

1. The Court may grant a motion to dismiss under Rule 12(b)(6) "only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In other words, we will not grant such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000) (permitting dismissal "only if it appears that the [plaintiffs] could prove no set of facts that would entitle [them] to relief"). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defen-

dants on notice of the essential elements of the plaintiffs' cause of action." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996).

Even if the allegations are insufficient by themselves, we will still deny a motion to dismiss so long as the allegations "in addition to inferences drawn from those allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124–125 (3d Cir.1998); *see also Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683 ("[T]he allegations of the complaint should be construed favorably to the pleader."); *Emerson v. Thiel College*, 296 F.3d 184, 188 (3d Cir.2002) ("A complaint will withstand an attack under Federal Rule of Civil Procedure 12(b)(6) if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery.").

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court

sponse thereto, and defendant's reply, attached to its motion for leave to file reply (docket entry #35), and the Court finding that:

(a) In defendants' previous motion to dismiss, they contended that the laws of Arkansas, not Pennsylvania, apply and that certain claims must therefore be dismissed;

(b) Plaintiff disagreed about the applicable law, so to resolve the dispute and determine which claims could proceed, we ordered the parties to conduct limited discovery pertaining to the choice of law question and then submit a joint stipulation of facts addressing the material factors, see Order of Feb. 6, 2006;

(c) They did so, and we now incorporate by reference that stipulation and address the renewed motion, which defendants have styled as a motion to dismiss Counts I, II, and XIII, and a motion for summary judgment seeking dismissal of the Pennsylvania substantive law claims;

(d) Because the parties conducted discovery on the choice of law issue and subsequently submitted new briefs incorporating what they learned through discovery and stating the standards for motions made pursuant to Fed.R.Civ.P. 12(b)(6) and 56, we shall treat this as a summary judgment motion only with respect to the narrow choice of law question, and after determining which law applies, we will consider whether the complaint states claims for which relief may be granted under that law;[2]

■ (e) We first must decide which state's substantive law controls, and to do that we look to the choice of law rules of our forum state, Pennsylvania, see *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941);

■ (f) After determining whether there is a conflict between the states' laws, we engage in "an 'interest analysis' of the policies of all interested states and then—based on the result of that analysis—characterize the case as a true conflict, false conflict, or unprovided-for case," see *Budget Rent–A–Car System, Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir.2005); see also *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir.1991); *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996);

■ (g) A true conflict exists "when the governmental interests of *both* jurisdictions would be impaired if their law were not applied," *Lacey*, 932 F.2d at 187 n. 15, a false conflict exists "if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," *id.*, at 187, and an "unprovided-for case arises when no jurisdiction's interests would be impaired if its

must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" *Id.* at 587, 106

S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The task for the Court is to inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505; *Tabas v. Tabas*, 47 F.3d 1280, 1287 (3d Cir.1995) (en banc)

2. We need only consider how Counts I, II, and XIII are treated under the applicable state's law. Therefore, we shall address Counts I, II, and XIII after we determine which state's law applies.

laws were not applied," *Budget*, 407 F.3d at 170;[3]

(h) Defendants' brief sets forth the substantive differences between the laws of Arkansas and Pennsylvania with respect to all of plaintiff's thirteen counts,[4] *see* Defs.' Mem. 3–6, and plaintiff expressly "agrees with Defendant Wyeth's comparison of the various areas of pertinent law," Pl.'s Mem. 4;

(i) The parties further agree that the results here could differ depending on which state's law are applied—meaning there is undisputedly a conflict between the laws—and that this is a true conflict, *see* Defs.' Mem. 7–9; Pl.'s Mem. 4;

(j) Because the interests of Pennsylvania and Arkansas would each be impaired if its laws were not applied, this case indeed presents a true conflict;[5]

3. In false conflicts, we apply the law of the only interested jurisdiction, *see, e.g., Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897, 899–900 (1966), and in unprovided-for cases, *lex loci delicti* governs, *see, e.g., Miller v. Gay*, 323 Pa.Super. 466, 470 A.2d 1353, 1355–56 (1983). True conflicts require a more complex analysis, as described herein.

4. Plaintiff's thirteen counts are: (1) wrongful death; (2) survival action; (3) strict products liability; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) fraud by intentional misrepresentation and concealment; (7) negligent misrepresentation and disclosure; (8) breach of express warranty; (9) breach of implied warranty; (10) negligence; (11) negligence *per se*; (12) violation of consumer protection law; and (13) punitive damages.

5. While both sides ask us to apply a true conflicts analysis, we nevertheless rehearse our reasons for doing so.

The parties agree that the states' laws concerning liability for pharmaceutical products differ in material respects. First, Arkansas permits some claims for strict liability for prescription drugs and may permit claims for breach of implied warranty for prescription drugs, whereas Pennsylvania does not. Second, Pennsylvania permits claims for negligent infliction of emotional distress, negligent misrepresentation and disclosure, negligence *per se*, and Arkansas does not. Third, regarding damages, Pennsylvania's wrongful death statute does not provide for punitive damages, and Arkansas's consumer protection law does not provide for punitive damages.

With respect to product liability law, which is central to this case, both Pennsylvania and Arkansas have adopted comment k of § 402a of the Restatement (Second) of Torts, albeit with different results. Comment k, entitled "Unavoidably unsafe products," provides that

the seller of drugs who properly prepares and markets his products and gives proper warnings is "not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk." Restatement (Second) of Torts § 402A cmt. k (1971). This exception recognizes that with "lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk." *Id.*

Pennsylvania has taken a "somewhat unique" approach in applying comment k; "the Pennsylvania Supreme Court unambiguously has held that § 402A strict liability does *not* apply in any way to prescription drugs." *Parkinson v. Guidant Corp.*, 315 F.Supp.2d 741, 748 (W.D.Pa.2004); *see Hahn v. Richter*, 543 Pa. 558, 673 A.2d 888, 889 (1996) ("Comment k, . . . denies application of strict liability to products such as prescription drugs"); *Incollingo v. Ewing*, 444 Pa. 263, 444 Pa. 299, 282 A.2d 206, 220 (1971) (finding strict liability rule of § 402A did not apply to prescription antibiotic drug). This contrasts with other jurisdictions that "have held that comment K to § 402A precludes only design defect strict liability claims while permitting manufacturing defect and failure-to-warn defect strict liability claims under comment K's caveats." *Parkinson*, 315 F.Supp.2d at 748. Arkansas is one such jurisdiction. It has applied comment k to design claims—not manufacturing or warning claims—and only as "an affirmative defense requiring proof that the drug product is indeed unavoidably dangerous." *See West v. Searle & Co.*, 305 Ark. 33, 806

■ (k) In true conflict cases, Pennsylvania choice of law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue," and this determination is made not by "a mere counting of contacts," but rather by a qualitative analysis, *In re Estate of Agostini*, 311 Pa.Super. 233, 457 A.2d 861, 871 (1983); *see also Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 856 (1970) ("The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale.");

■ (*l* ) In other words, the relevant inquiry is "the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law," *Troxel v. A.I. duPont Institute*, 431 Pa.Super. 464, 636 A.2d 1179, 1181 (1994) (citation omitted);

(m) To make this assessment, the Pennsylvania courts use "a methodology which is a combination of the 'government interest' analysis and the 'significant relationship' approach of Section 145 of the Restatement (Second) of Conflicts," *id.* at 1180;

(n) Relevant considerations include:

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971);

(*o*) The "[c]ontacts to be taken into account in applying [these] principles" include:

(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the rela-

---

S.W.2d 608, 612–13 (1991). Thus, pharmaceutical companies must meet their burden of proof before can they claim the protection of comment k. Arkansas deems this approach consistent with the Restatement (Second) of Torts § 402A comment k and "the better public policy." *Id.* at 612.

The two states have plainly made different policy choices. As Judge Davis recently explained, by permitting negligence claims and not strict liability claims, Pennsylvania "encourages drug manufacturers who do business in Pennsylvania to exercise reasonable care to produce safe products, while recognizing that it is unfair to penalize manufacturers of inherently unsafe products, such as pharmaceutical drug companies, for the mere act of designing, manufacturing, and labeling such products." *Henderson v. Merck & Co., Inc.*, No. 04–5987, 2005 WL 2600220, at *3–4 (E.D.Pa. Oct. 11, 2005) (Davis, J.); *see also LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069,

1072 (3d Cir.1996) ("A state could have a host of reasons for limiting liability, including encouraging economic activity in the state . . . and lowering costs to consumers . . . ."). Arkansas, in contrast, has apparently decided that the best way to protect its citizens and to make pharmaceutical companies act responsibly is to hold those companies liable for their products' effects, even in some cases where the companies did not act negligently.

Accordingly, Pennsylvania's interests would be impaired if Wyeth Pharmaceuticals, a Pennsylvania citizen, were subject to Arkansas's strictly liability laws when Pennsylvania had already decided it was in the best interest of its industry and citizens not to allow such claims. Arkansas's interests would likewise be impaired if Terry Bearden, administratrix of an Arkansas citizen's estate, were denied the opportunity of pursuing a claim that Arkansas permitted to ensure its citizens' well-being.

tionship, if any, between the parties is centered.

*Id.* § 145(2);

(p) We now review the relevant contacts to which the parties stipulated:

(a) Arkansas is the state in which plaintiff's decedent (1) lived and maintained residency for several years before his death; (2) received all medical care associated with his depression, including his prescription for Effexor XR; (3) purchased Effexor XR; (4) received any representations, express warranties, or warnings concerning Effexor XR; (5) experienced any reactions to Effexor XR; and (6) committed suicide, *see* Stip. of Facts I ¶¶ a-b, e-n;

(b) Decedent's estate is also administered in Arkansas and his administratrix is an Arkansas resident, *see id.* I ¶¶ c-d;

(c) Both Wyeth and Wyeth Pharmaceuticals, a wholly-owned subsidiary of Wyeth, are Delaware corporations, and Wyeth's principal place of business is in New Jersey, *see id.* II ¶¶ a-e;

(d) Regarding Pennsylvania contacts, it is: (*l*) the state in which Wyeth Pharmaceuticals' divisional headquarters and principal place of business are located; (2) the state from which any representations, express warranties, or warnings concerning Effexor XP were issued; (2) and the state where the following departments, which employed personnel primarily responsible for Effexor XP, are headquartered: Research and Development, Regulatory Affairs, Global Safety Surveillance and Epidemiology, Global Medical Affairs and Global Medical Safety, Sales and Marketing Operations Team, Clinical Division, Regulatory Affairs, *see id.* I ¶¶ k–1, II ¶¶ c, f, h-n;

(e) Any Effexor XR decedent used was manufactured in New York and/or Puerto Rico, *see id.* II ¶ g;

(f) Effexor XR's clinical trials were conducted throughout North America and other continents, *see id.* II ¶ o;

■ (q) With respect to the contacts relevant under the Restatement, first, the fact that Arkansas was the place of injury—and not merely a "fortuitous" one as plaintiff contends—is entitled to considerable weight, *see Shields v. Consolidated Rail Corp.*, 810 F.2d 397, 401 (3d Cir.1987) ("where the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance, and in some instances may be determinative") (internal quotation and citation omitted);

(r) Second, conduct causing the injury occurred both in Pennsylvania, where Wyeth Pharmaceuticals conducted various activities concerning Effexor XR and from which it issued any representations, warranties, or warnings, and in Arkansas, where decedent and his doctor received any representations, warranties, or warnings about the drug, and where decedent was prescribed, bought, ingested, and was allegedly injured by the drug;

(s) Third, decedent was an Arkansas resident, as is plaintiff, and Wyeth Pharmaceuticals maintains a principal place of business in Pennsylvania, though both it and Wyeth are Delaware corporations and Wyeth's principal place of business is in New Jersey;

(t) Fourth, the parties' relationship was centered in decedent's home state, where he purchased, ingested and allegedly was injured by Effexor XR, *see Normann v. Johns–Manville Corp.*, 406 Pa.Super. 103, 593 A.2d 890, 894 (1991) ("the relationship between decedent and appellant was centered in New York, for the reason that decedent was exposed to appellant's products only in New York");

(u) Based on these facts and the state's respective laws and policies, Pennsylvania has an interest in regulating the activities of one of the defendants, Wyeth Pharmaceuticals, a company that maintains a principal place of business within the Commonwealth and that conducted many of the activities concerning Effexor XP there;

(v) At the same time, Arkansas has an interest in ensuring protection and compensation for a resident who committed suicide within his home state allegedly, at least in part, because he purchased and ingested a drug there that had been prescribed by a local doctor, one who may or may not have made representations to decedent about the drug;

(w) Notably, in similar cases where the plaintiff was injured in his home state, both Pennsylvania state courts and federal courts applying Pennsylvania choice of law

principles have refused to apply Pennsylvania substantive law;[6]

(x) For instance, in *Giovanetti v. Johns–Manville Corp.,* 372 Pa.Super. 431, 539 A.2d 871 (1988), the court applied New Jersey law, finding that—even though defendants were Pennsylvania-based manufacturers and distributers of asbestos products and Pennsylvania therefore had a legitimate interest in regulating their activities—New Jersey's contacts were more significant because (1) the defendants did business in New Jersey; (2) plaintiff was a New Jersey resident; (2) plaintiff worked in New Jersey for twenty-seven years and Pennsylvania for only two years; (3) plaintiff was injured on the job by defendants' asbestos products; and (4) the parties' relationship was centered in New Jersey, *see id.* at 873; *see also Normann v. Johns–Manville Corp.,* 406 Pa.Super. 103, 593 A.2d 890, 894–95 (1991)

**6.** We note plaintiff's reliance on *Kelly v. Ford Motor Co.,* 933 F.Supp. 465 (E.D.Pa.1996), for the proposition that we must apply Pennsylvania law, but we find that case distinguishable.

In *Kelly,* Pennsylvania residents were killed in a car accident in Pennsylvania while driving a car purchased in the Commonwealth. The car manufacturer was a Delaware corporation with a principal place of business in Michigan, where it made decisions and conducted activities regarding production, design, and testing of the vehicle. Michigan prohibited punitive damages, and Pennsylvania allowed them. The court, addressing solely that issue under a true conflict analysis, applied Michigan law.

Plaintiff here has not addressed differences between Arkansas's and Pennsylvania's general punitive damages laws, nor explained how any differences on this issue create the true conflict *Kelly* addressed. Both states generally permit punitive damages, though they may treat damages differently with respect to particular claims. Apparently both have made the same policy decision—punitive damages are permissible to deter or punish misconduct.

As defendants point out, whatever differences exist do not create a true conflict. Arkansas statutorily limits punitive damages for each plaintiff to either $250,000 or three times the amount of compensatory damages awarded, not to exceed $1,000,000. *See* Ark. Code Ann. § 16–55–208(a). Pennsylvania does not expressly impose statutory caps. However, it is bound by the Supreme Court's decision in *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), which made clear that "few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process," *id.* at 410, 123 S.Ct. 1513. Moreover, "when compensatory damages are substantial, then an even lesser ratio can reach the outermost limit of the due process guarantee." *Id.*

In effect, there is very little difference, if any, between the states' laws pertaining to punitive damages, thereby distinguishing this case from the true conflict that *Kelly* addressed. Moreover, in *Kelly* the plaintiff claimed defective design and manufacturing, and we agree with defendants here that this action's focus on warnings claims requires us to consider a factor that the *Kelly* court did not have to, namely whether the decedent or his doctor received or acted upon any warnings in his home state.

(holding the trial court erred in applying Pennsylvania law because the Commonwealth's policy of compensating its citizens for injuries caused by defective products and discouraging the manufacturing and distribution of those products was not implicated where the decedent was a New York resident when exposed to the asbestos products in New York, and the parties' relationship was centered in New York); *Lewis v. Bayer AG,* 70 Pa. D. & C.4th 52, 78 (Pa.Ct.Com.Pl.2004) (applying the law of the state where the class member resided, was prescribed, ingested, and was injured by the drug in question);

(y) In another case involving the same defendants before us now,[7] *In re Diet Drugs,* 1999 WL 673066, 1999 U.S. Dist. LEXIS 13228 (E.D.Pa. Aug. 26, 1999), the court noted that "[the parent company's] subsidiary, Wyeth–Ayerst Laboratories Division, has its principal offices in St. David's Pennsylvania and many of [the parent company's] activities regarding the drugs at issue occurred in Pennsylvania," *id.* at 1999 WL 673066 *15, 1999 U.S. Dist. LEXIS 13228 *41, but nevertheless applied the law of the state in which each class member's claims arose;

(z) The court reasoned that the jurisdictions in which the drugs were "prescribed and ingested ... have a strong interest in applying their applicable law to the sale, prescription and ingestion of pharmaceuticals within its borders, which is the conduct which gave rise to the class members' claims," *id.* at 1999 WL 673066 *15–16, 1999 U.S. Dist. LEXIS 13228 *42; *cf.*

*Henderson v. Merck & Co., Inc.,* No. 04–5987, 2005 WL 2600220, at *3–4 (E.D.Pa. Oct. 11, 2005) (Davis, J.) (noting that Pennsylvania's interests were diminished because defendants were not its citizens, but applying Michigan's product liability law because that was the state in which plaintiff lived, received the prescription, bought and ingested the drugs, and was injured);

(aa) After considering the contacts qualitatively, and in accordance with the jurisprudence discussed herein, we find that Arkansas has a greater interest in applying its laws to protect and provide redress for a citizen who was prescribed a drug, received any relevant representations or warnings about it, purchased it, ingested it, and was injured by it—all within his home state of Arkansas;

(bb) Applying Arkansas substantive law, the claims for negligent infliction of emotional distress (Count V), negligent misrepresentation (Count VII), negligence *per se* (Count XI), and the prayer for punitive damages in the consumer protection statute claim (Count XII) indubitably must be dismissed;

(cc) Accordingly, we shall also dismiss the Pennsylvania state law claims which plaintiff pled together with, and in the alternative to, their Arkansas counterparts—namely, the references to Pennsylvania law claims in Count I, Count II, and Count XII;[8]

(dd) Defendants further contend that the stand-alone claims for wrongful death (Count I), brought pursuant to Ark.Code Ann. § 16–62–102,[9] and a survival action

---

**7.** Wyeth was formerly known as American Home Products Corporation, and Wyeth Pharmaceuticals was formerly known as Wyeth–Ayerst Laboratories Division.

**8.** We also note an independent ground for dismissing Count XII's Pennsylvania law claim. Plaintiff concedes that the "portion of Count XII (Violation of Consumer Protection Law) seeking relief for a violation of Pennsylvania's consumer protection law should prop-

erly be dismissed because Plaintiff lacks standing to pursue [this] action." Pl.'s Mem. 3.

**9.** Ark.Code Ann. § 16–62–102, "Wrongful death," provides, in part, that:

(a) (1) Whenever the death of a person ... shall be caused by a wrongful act, neglect, or default and the act, neglect, or default is such as would have entitled the party in-

(Count II), brought pursuant to Ark.Code Ann. § 16–62–101,[10] should be dismissed under Fed.R.Civ.P. 12(f) because they fail to state different substantive legal theories or independent claims that are not covered in Counts III through XIII;

 (ee) As one court examining these statutes explained:

It is quite clear that actions for survivorship and actions for wrongful death are separate and distinct in nature.... In a survival action, the administrator asserts the decedent's own cause of action, and only the administrator may bring this cause of action. The wrongful death statute, on the other hand, creates a cause of action in the survivors, and it may be brought by the administrator in their behalf, or by the heirs themselves if there is no administrator.

*First Commercial Bank. N.A., Little Rock, Ark. v. United States,* 727 F.Supp. 1300, 1302 (W.D.Ark.1990) (citations omitted);

 (ff) Since plaintiff asserts the decedent's causes of action through various counts of the complaint, her separate survival action count is unwarranted, and we shall dismiss Count II;

(gg) However, with respect to the wrongful death count, defendants have not pointed to any legal authority suggesting that Arkansas disallows such a claim to proceed along with other statutory and common-law claims, and, in fact, Arkansas courts regularly allow this, *see, e.g., Health Facilities Management Corp. v. Hughes,* ——S.W.3d ——, 365 Ark. 237 (2006) (jury rendered verdict on four separate counts: wrongful death, common-law negligence, statutory negligence, and statutory resident's rights claims); *Advocat. Inc. v. Sauer,* 353 Ark. 29, 111 S.W.3d 346, 351 (2003) (jury rendered verdict on four separate counts: wrongful death, negligence, medical malpractice, and breach of contract); *see also Brown v. St. Paul Mercury Ins. Co.,* 308 Ark. 361, 823 S.W.2d 908, 909 (1992) ("Our wrongful death statute created a new and separate cause of action which could arise if death was caused by any wrongful act and which carries its own statute of limitations as part of that right.");

(hh) Based on this jurisprudence, we shall not dismiss Count I;

(ii) Finally, defendants assert that the separate punitive damages claim (Count XIII) should be dismissed because Arkansas does not recognize a separate action for punitive damages, which are in fact recoverable in conjunction with other claims;

(jj) Plaintiff apparently concedes that she cannot advance a stand-alone claim for punitive damages, but contends she is not

---

jured to maintain an action and recover damages in respect thereof if death had not ensued, then and in every such case, the person or company or corporation that would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person ... injured ....

(2) The cause of action created in this subsection shall survive the death of the person wrongfully causing the death of another ... Ark.Code Ann. § 16–62–102(a)(1), (2).

10. Ark.Code Ann. § 16–62–101, "Survival of actions—Wrongs to person or property," provides, in part, that:

For wrongs done to the person or property of another, an action may be maintained against a wrongdoer, and the action may be brought by the person injured or, after his or her death, by his or her executor or administrator against the wrongdoer or, after the death of the wrongdoer, against the executor or administrator of the wrongdoer, in the same manner and with like effect in all respects as actions founded on contracts.

Ark.Code Ann. § 16–62–101(a)(1).

barred from "specifically articulating her request for punitive damages in a separate paragraph," Pl.'s Mem. 4;

[▮] (kk) Under Arkansas law, "the general rule is that a separate and independent action cannot be maintained for exemplary or punitive damages, but such damages are received, if at all, as an incident to the claim and judgment for actual damages," *St. Louis, I.M. & S. Ry. Co. v. Pickett,* 70 Ark. 226, 67 S.W. 870, 871 (1902); and

[▮] (ll) Therefore, while plaintiff is entitled to seek punitive damages in connection with some of her other claims, her complaint needlessly advances a separate count for these damages, so we shall dismiss Count XIII,

It is hereby ORDERED that:

1. Defendants' motion for leave to file reply is GRANTED; and

2. Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART in that:

(a) Counts II, V, VII, XI, XIII are DISMISSED;

(b) The prayer for punitive damages in Count XII is DISMISSED; and

(c) The Pennsylvania law claims in Counts I, II and XII are DISMISSED.